## CITY OF MALVERN *v.* NUNN.
### Opinion delivered February 12, 1917.

1. IMPROVEMENT DISTRICTS—ORGANIZATION—VALUATION.—The last assessment roll prior to the organization of the district is the only criterion by which to ascertain the total valuation of real property within the bounds of the district.

2. IMPROVEMENT DISTRICTS—ASSESSMENT OF PROPERTY—SCHOOL PROPERTY.—Act 125, Acts of 1913, does not repeal Kirby's Digest, § 5717 but section 7, Act 125, Acts of 1913, subjects the property of public school districts to assessment for local improvements beneficial thereto.

3. IMPROVEMENT DISTRICTS—ORGANIZATION—PETITION—OWNERS OF ESTATES BY INHERITANCE.—Owners of lands which they have acquired by inheritance may sign the petition for the organization of an improvement district.

4. IMPROVEMENT DISTRICTS—ORGANIZATION—PETITION—WHO MAY SIGN. —Section 1, Act 125, Acts 1913, held to mean that all property represented by instruments subject to record shall be considered in determining whether the petition represents a majority in value of the property in the proposed district, otherwise not.

5. IMPROVEMENT DISTRICTS—ORGANIZATION—PETITION—GUARDIAN MAY SIGN.—The guardians of minors and insane persons may sign the petition for the organization of an improvement district.

6. SAME—SAME—SAME—CORPORATIONS.—The petition for the organization of an improvement district may be signed by the officers of a corporation owning property in the proposed district, when properly authorized by the directors.

7. SAME—SAME—SAME—PARTNERSHIP.—One partner may sign for partnership property, the petition for the organization of an improvement district, and it will be presumed that the signature of the partnership was executed with authority, in the absence of a showing to the contrary.

8. IMPROVEMENT DISTRICTS—ORGANIZATION—OWNERS OF PROPERTY UNDER RECORDED DEEDS MAY SIGN PETITION.—In the organization of a local improvement district, deeds of record in the recorder's office in the county, at the time the city council passes on the question, are the criterion in so far as the property represented by instruments subject to record is concerned.

9. IMPROVEMENT DISTRICTS—PETITION—"JAS. D. CAMPBELL AND WIFE." The signature "Jas. D. Campbell and Wife," to a petition for the organization of an improvement district, held sufficient.

Appeal from Hot Spring Chancery Court, *J. P. Henderson*, Chancellor; reversed.

*Henry Berger* and *Rose, Hemingway, Cantrell, Loughborough & Miles*, for appellants.

1. A majority in value of the owners of real property signed both petitions. The majority must be determined solely by the county assessment books and property left off these books cannot be considered. 99 Ark. 508, 516. Churches and school property should both be put upon the assessment books, but if they are omitted the books are still conclusive. *Ib.*

2. Guardians may sign for their wards. Kirby's Dig., § 5717; 2 Page & Jones on Taxation by Assessment, § 788; 32 Oh. St. 545, 561; 42 *Id.* 62; 93 N. W. 231-3; 20 Atl. 1028; 64 Md. 10; 14 Ark. 396; 84 *Id.* 258; 48 *Id.* 297.

3. The signature to the partnership property in the firm names was sufficient. 36 Ark. 464 overruled in 65 Ark. 503-6; 92 *Id.* 63; 74 *Id.* 476; 68 *Id.* 157; 56 *Id.* 179, 324.

4. Deeds filed and recorded at the time the court disposes of the case should be considered. Act of 1913. Chancery cases are tried *de novo.* If the deeds were of record when the case was tried in the chancery court they should be considered. 85 Ark. 105; 93 *Id.* 396; 101 *Id.* 503.

5. Estates by inheritance and will should be considered. The Constitution provides that local improvement assessments shall be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected. The title of heirs and devisees is of *record* even if not recorded in the office of the recorder of deeds. The Legislature can not arbitrarily deprive owners of rights given by the Constitution. 33 Ark. 816; 49 *Id.* 535; 76 *Id.* 135; 89 *Id.* 273; 123 *Id.* 284, 327. If the court below was right the Act of 1913 is void. Acts of 1913, p. 528; 64 Kans. 802; Cooley Const. Lim. (5 Ed.) 453; 34 Am. Rep. 55; 39 Minn. 438; 56 L. R. A. 468, 472; 32 Ark. 132; 4 Am. Rep. 214; 4 Wheaton, 519; 13 Mich. 329; 45 Barb. 212; 23 Ind. 46, etc.

6. Corporations can sign by directors through their officers. 2 Cook on Corp. (4 Ed.), §§ 708, 709; Kirby's Dig., § 841.

7. All of the Malvern branch railroad was not within the district. The property was certified by the Tax Commission, but it is not shown where the property was located. Buildings are not real property. Kirby's Dig., § 6949. Buildings and grounds are real estate. The railroad property should not be counted.

8. The signatures by husband and wife were good. 84 Ark. 258; 86 *Id.* 368; 112 *Id.* 362.

9. J. P. Fletcher, who signed the water petition did not sign the sewer petition. Mary McCoy also failed to sign the latter. These should be deducted. Mrs. J. P. Browning signed both and should be counted. Mr. & Mrs. are no part of the names. 29 Cyc. 267.

If these contentions are correct, and we contend they are, a clear majority for the petition is shown.

*W. Morton Carden* and *E. H. Vance, Jr.,* for appellees.

1. The questions before this court are of two kinds: (1) What properties and values are to be considered in arriving at the total property and values; (2) the legality of certain signatures to the majority petitions. Const. Art. 19, § 27; Kirby's Dig., §§ 5667, 5673, 5717; Acts 1913, p. 528.

2. School property should be counted in the aggregate valuation. 99 Ark. 508; 84 *Id.* 320. The Act of 1913 changed or repealed Kirby's Dig., § 5715, etc. 56 Ark. 335; 91 *Id.* 5; 2 How. (N. S.) 423; 69 Ark. 68; 91 *Id.* 5. The tax rolls plus the school property is now the basis for the consideration of whether or not a majority has signed.

3. Guardians cannot sign for property owned by their wards. 108 Ark. 146; 69 *Id.* 74; 50 *Id.* 127; 111 *Id.* 332. They are not owners. 14 *Id.* 396; 48 *Id.* 297; 53 *Id.* 573. The probate court cannot ratify. The Legislature says "the absolute owner," and guardians are not so.

4. One partner cannot sign for the firm. 36 Ark. 464; Schumaker on Partnership, (2 Ed.) 124; 111 Ark. 322.

5.   Deeds filed after the petitions were filed and after the council had acted cannot be considered. The Act says the council and court shall be guided by the record of deeds in the office of the recorder and shall not consider any unrecorded instrument. This is mandatory and the act is constitutional. 26 Ark. 285; 99 *Id.* 518; 45 *Id.* 401; 49 *Id.* 376; 67 *Id.* 591; 59 *Id.* 436.

6.   Estates by inheritance and will are not of record as prescribed by the act. 99 Ark. 518 and cases cited *supra* under No. 5.

7.   The stockholders of a corporation are the owners. A signature by officers or directors is not sufficient. 108 Ark. 146.

8.   The value of the railroad property in both districts should be considered. Both properties should be on the tax books and were benefited. The tax rolls are conclusive. 99 Ark. 518. It was error to deduct the $1,532.00 because of double taxation. The buildings were real estate, Kirby's Dig., §§ 5673, 6872.

9.   Where the wife owns the property she must sign. The signatures of "J. D. Campbell and wife" and "Mrs. J. P. Browning" and "J. P. Browning" the husband's name, are not sufficient. There could be no ratification for the wife's name was not signed. 111 Ark. 323.

10.   Only one of the Chamberlain heirs signed. 23 Ark. 568; Kirby's Dig., § 8020. A refusal to allow certain owners to sign petitions is not confiscation. The Legislature is granted the power to form these districts and prescribe the manner and methods. It has spoken and their determination is final. Appellants, after making these proper deductions, have not a majority of the values. The decree should be affirmed.

HUMPHREYS, J.  Appellees brought two suits in the Hot Spring Chancery Court against the city of Malvern, and G. E. Mattison, T. E. Nunn and E. T. Bramlitt, Commissioners of Water Works Improvement District No. 12 and Sewer Improvement District No. 13, seeking to enjoin the city council and commissioners

from proceeding further in the promotion or construction of the districts.

Appellants answered and the pleadings and proof tender only one issue for decision here. The issue is whether a majority in value of the owners of real property in each district signed the second petition in the course of the organization of said districts. For the purpose of convenience, the two cases were consolidated by the consent of all parties.

Appellants assert that the taxable value in each district amounted to $381,719.15; appellees contend for a total valuation of said properties at $404,651.00. The correct amount of the total valuation depends upon what shall be done with two items. The chancellor deducted $1,532.00 from the total amount on the ground that the Malvern Branch of the Rock Island Railroad was doubly assessed. It is immaterial that the last assessment roll shows a double assessment, for this court has construed section 5717 of Kirby's Digest on its application to the question of the method of determining whether a majority in value of the owners of real property within an improvement district had consented to the improvements. Mr. Justice Frauenthal, in rendering the opinion, said in referring to section 5717 of Kirby's Digest:

"By that statute we are of opinion that the Legislature has prescribed that the total value of all the real property in an improvement district shall be evidenced and determined by the total valuation placed upon the property therein as shown by the last county assessment, and that the value of each lot and parcel of real property therein shall be evidenced and determined by the valuation placed thereon in said assessment." *Imp. Dist. of Clarendon No. 1* v. *St. Louis S. W. Ry. Co.,* 99 Ark. 508.

(1) The last assessment roll prior to the organization of the district is the only criterion by which to ascertain the total valuation of real property within the bounds of the district. The chancellor erred in

deducting $1,532.00 from the total value shown on the last assessment roll on account of the double taxation.

(2) The chancellor declined to include in the total valuation, school property of the assessed value of $19,900.00. It is agreed that no assessment was made of this property and that it is not listed or valued in the last assessment roll. Appellee contends, however, that school property is exempt from general taxation and should not appear in the clerk's assessment. Section 6987 of Kirby's Digest declares otherwise. It requires the assessor to list all exempt property—specially mentioning school property and property used exclusively for public purposes—in a special list. Appellees say that section 7, Act 125, Acts of 1913, repeals that part of section 5717 of Kirby's Digest, insofar as school property within the district is concerned. Act 125, referred to, only undertakes to amend two sections of Kirby's Digest. It does not specifically repeal section 5717, nor does it do so by necessary implication. Section 7 of Act 125, Acts 1913, *subjects the property of public school districts to assessments for local improvements beneficial thereto.* There is no language or expression in the statute that sets up any different standard for measuring the value of school property than any other real estate in the district. This property has a voice in the organization of the district according to its value fixed by the assessment roll. There is no conflict between section 7 of Act 125, Acts 1913, subjecting school property to assessment for local improvement purposes, and section 5717 of Kirby's Digest providing that the last county assessment on file in the county clerk's office shall govern the council as to the value of the property. The statutes can be construed together and both stand. Both of these statutes are perfectly consistent with section 6987 of Kirby's Digest, requiring the assessor to carry public school houses and other public property on a separate list or roll.

The holding of the chancellor excluding the school property in the district is correct.

The chancellor found the total valuation to be $38,719.15 by deducting $1,532.00 on account of a double assessment of the Malvern Branch of the Rock Island Railroad. By adding this amount erroneously deducted, the total valuation of assessments according to the last assessment roll should be $383,251.15. Any appreciable amount over one-half of this sum would be a majority in value of the property in each district. In round numbers, the sum of $191,626.00 is a necessary majority.

It is conceded and agreed that the petitioners had signers on the petitions for the creation of the districts representing a property value of $219,120.00. The parties agree that property to the value of $12,512.50 should be deducted from the last named amount because of unauthorized and illegal signatures to said petition.

(3-4) It is also agreed that owners by inheritance and under wills signed for property to the value of $8,800.00. The chancellor held this amount should be deducted from the petition because the deeds of owners by inheritance and under will do not appear on the record of deeds in the office of the recorder of the county. In striking this property from the petition, the chancellor was guided by his construction of the latter part of section 1 of Act 125 of Acts of Arkansas, 1913. The language used in the act is as follows:

"In determining whether those signing the petition constitute a majority in value of the owners of real property within the district, the council and the chancery court shall be guided by the record of deeds in the office of the recorder of the county, and shall not consider any unrecorded instrument."

It is provided by our Constitution that assessments for local improvements "shall be based upon consent of a majority in value of the property holders owning property adjoining the property to be affected."

The construction placed upon the act by the chancellor brings the act in direct conflict with this provision of the Constitution. The Act must fall if the

construction placed upon it by the chancellor is correct. The Act can stand and be perfectly consistent with the Constitution if we construe the statute to mean that *unrecorded instruments,* subject to record, shall not be considered by the council in determining whether a majority in value have signed the petition. Certainly the intent of this statute was not to prevent property owners of real estate in improvement districts from signing the petition. Validity may be given the statute by saying it means that all property represented by instruments subject to record shall be considered if recorded, otherwise not. Then any one holding a deed to property can sign the petition by placing his deed on record. He is not excluded from participation in the organization of the district if he follows the method provided by law. The owner of lands by inheritance or under will holds a derivative title; the one derives it from the ancestor or relative, the other from the testator. Neither acquires it by an instrument subject to record in the recorder's office of the county. They are real owners and can convey by instrument subject to record. Was the intention of this statute to exclude owners and holders of lands in fee from participating in the organization of improvement districts simply because they had no instruments evidencing their title on record? A large portion of the lands in every district is held by derivative title. Our construction of this statute is that it applies only to lands evidenced by instruments subject to record in the recorder's office of the county. The chancellor committed error in striking the estates by inheritance and will from the petitions.

(5) Guardians signed the petition for property to the value of $4,450.00 and the chancellor deducted said amount from the petition because the legal title to the real estate was not in the guardian. Guardians are authorized by statute to sign for their wards. Kirby's Digest, section 5717. Minors and insane persons are not *sui juris,* and can act only through guardians by authority vested in them by the statute laws of the State. This court has held that an owner of real estate

within the bounds of a contemplated district can sign by duly authorized agents. It has held that a wife may ratify her signature if signed by her husband without authority. *Board of Improvement* v. *Offenhauser,* 84 Ark. 258.

The State of Arkansas has absolute power to provide for the appointment of a guardian for a minor or insane person and to fix the scope and extent of his authority. The State has provided the ways and means for his appointment, and conferred power on the guardian to sign petitions for the organization of improvement districts wherein his ward's lands are situate. The relationship existing between guardian and ward suggests the vesting of such power in the guardian. The statute is valid and confers the power, so the chancellor erred in deducting the value of lands signed for by guardians.

(6) It is contended that the property of a corporation must be signed for by the stockholders or specially authorized by a majority of the stockholders. This contention is on the theory that the real owners of the fee must sign the petitions seeking to organize the district. Under former adjudications of this court, it is proper to sign by agent, or if the name of the owner is signed by agent without authority, the owner can afterward ratify the act.

Boards of directors are agents for the corporations they represent and have very broad powers under the statutes of this State. Section 841 of Kirby's Digest provides: " The stock, property, affairs and business of every such corporation shall be under the care of, and shall be managed by, not less than three directors, who shall be chosen annually by · the stockholders, etc." The power vested by this statute is so general as to include the power of the board of directors through its duly authorized officers to sign a petition for the organization of an improvement district. Necessarily, the reserved powers in the stockholders in a corporation must be limited, else the conduct of the corporate affairs would be hampered at every turn. This broad statute

conferring power on the board of directors to act for the corporation is grounded in the wisdom of the general law on the subject. In signing these petitions, the boards acted within the scope of their actual and implied authority. The chancellor was correct in not excluding the property represented by corporations from the petitions.

(7) It is contended that one partner cannot sign for the partnership property. This court has decided that conveyances executed by one partner in the presence of the other, and by his consent, are binding in equity on the firm. *Ferguson* v. *Hanauer*, 56 Ark. 167; *Greer* v. *Ferguson*, 56 Ark. 306.

Two subsequent cases are cited to the effect that the signing of a co-tenant binds his interest only. In those cases the partnership or joint name does not appear to have been signed. In the case at bar, the names of "Johnson & Parish" and "Sheldon Handle Company" were signed. Unless something to the contrary appears, this court will presume that the firm or joint names were signed by authority, and therefore bind the firm. The chancellor erred in deducting $300.00 from the petition on account of the signature of "Johnson & Parish."

(8) The chancellor deducted $7,700.00 in value from the second petitions presented for the organization of the districts, because the deeds or conveyances representing these amounts were not on record on the 23d day of June, 1916, the date that the city council found that the petitions contained a majority in value of the owners of real property within said districts. It is said that he erred for the reason that at the time he heard the case, deeds representing $3,650.00 of said sum had been recorded. It is argued that since the chancellor heard this case as an original proceeding, he heard it *de novo;* and under section 7, Act 125, of the Acts of Arkansas, 1913, he was directed to be guided by the deed record on the date of the hearing. In the same section referred to, the character of action in the chancery court is designated as a *review* of the proceed-

ings had before the city council. Improvement districts within towns or cities are established by proceedings before the city council and not in chancery courts. It follows that deeds of record in the recorder's office in the county, at the time the council passes on the question, is the criterion in so far as the property represented by instruments subject to record is concerned. The chancellor correctly deducted the amount of $7,700.00 from the petitions on this account.

(9) Lots 7 and 8, block 19, value $150.00, appear to have been signed for in the name of "Jas. D. Campbell and Wife." The husband signed in this manner with the consent and knowledge of his wife. Had he signed either the name "Birdie Campbell" or "Mrs. J. D. Campbell" with her consent and knowledge, certainly no question would have been raised as to the sufficiency of her signature. Jas. D. Campbell & wife included the name of "Mrs. Jas. D. Campbell" as effectually as if signed "Mrs. Jas. D. Campbell."

Mrs. Jas. P. Browning signed both petitions for property of the value of $500.00. She signed the Water Works Petition as "Mrs. J. P. Browning" and the Sewer petition "J. P. Browning." In both instances she was signing for herself and not her husband.

The signatures under the agreed statement of facts are sufficient and neither amount should be deducted from the petition.

The record discloses that J. P. Fletcher signed the Water Works petition for $350.00, and Mary McCoy for $250.00; and that neither signed the sewer petition.

By way of resume—the correct total valuation of the property in each district is $383,251.15.

Amounts signed originally in the Water Works District were $219,120.00. Amounts signed originally in the Sewer District, $218,520.00.

The necessary majority in value would be $191,-626.00. By our findings, the following amounts should be deducted from the petitions presented to the city council for the organization of the districts.

Deeds not recorded on June 23, 1916, $7,700.00, and illegal and unwarranted signatures in the sum of $12,512.50, making a total of $20,212.50.

Deducting said amount from the total amount signed for Water Works leaves a balance of $198,970.50, or $7,281.50 more than the necessary majority; and deducting said amount from the total amount signed for the Sewer District leaves $198,307.50, or $6,681.50 more than the necessary majority.

More than a majority in value of the property owners in each district having signed the petitions for the organization thereof, injunction will not lie to restrain the city and commissioners from taking further proceedings, either in the organization of said districts or the construction of said improvements.

The decree will be reversed and the cause remanded with instructions to dismiss the bill.