WALTON *v.* COMMISSIONERS OF LIGHT IMPROVEMENT DIS-
TRICT No. 1 OF BENTON.

## Opinion delivered May 24, 1920.

1. MUNICIPAL CORPORATIONS — LIGHTING PLANT — IMPROVEMENT DIS-
TRICT.—In determining whether the requisite majority has been
obtained by those who petition for the establishment of an im-
provement district for the purchase of an electric lighting plant,
under Kirby's Digest, § 5717, the value of real property of rail-
road companies within the district must be considered.

2. SAME—IMPROVEMENT DISTRICT—AUTHORITY TO SIGN PETITION.—
Where a petition for establishing an improvement district for the
purchase of an electric lighting plant, under Kirby's Digest,
§ 5717, was signed by certain corporations by their secretary
and treasurer, the presumption that they were authorized to
do so was overcome by undisputed testimony of such officers that
no such authority had been conferred upon them.

3. SAME — IMPROVEMENT DISTRICT — PRESUMPTION OF OWNERSHIP.—
Upon the question whether the necessary majority in value has
been signed to a petition for a municipal improvement district,
a presumption of ownership is indulged in favor of persons in
possession of or who pay taxes on land to which they have no
title of record, but such presumption is *prima facie* only, and
may be overcome by evidence.

4. SAME—PRESUMPTION OF OWNERSHIP—WHEN OVERCOME.—Evidence
*held* to overcome *prima facie* presumption of ownership of lands
by signers of an improvement petition who were in possession
thereof or who paid taxes thereon without having title of record.

Appeal from Saline Chancery Court; *J. P. Hender-
son,* Chancellor; reversed.

*Mehaffy, Donham & Mehaffy,* for appellant.

1. The district has no right to purchase the light
plant. In view of the allegations in the complaint and
the admissions and allegations in the answer, the pur-
chase of the light plant was not abandoned; there is no
evidence that the purpose was abandoned.

2. The improvement district can do nothing unless
given authority by the Constitution or statute. Art. 9,
§ 27, Const. The purchase of a light plant is not making
an improvement of a public nature and there is no statute

authorizing it.    55 Ark. 148.    The ordinance was void.
113 Ark. 593; 94 *Id.* 380; 71 *Id.* 4; 79 *Id.* 229; 71 *Id.* 17;
52 *Id.* 107; 114 *Id.* 366; 117 *Id.* 93.

3.    An improvement district can not be formed to
furnish power.    Const., art. 19, § 27; *Ib.* art. 22, § 2; 115
Ark. 194.    Supplying the city of Benton with electric
power and the formation of an improvement district is
not permitted by law.    One can not be taxed for the pur-
pose of promoting the private interests of another.

3.    A majority in value of the owners of real prop-
erty in the district did not sign the petition as required
by law.    111 Ark. 314.    The assessments made by the
State Tax Commission should be construed as a part of
the total assessment.    127 Ark. 418; 131 *Id.* 129.

*N. A. McDaniel,* for appellees.

The petitions show for themselves and that a ma-
jority in value duly signed them and the chancellor so
found.    If the petitions signed by the corporations by
their officers are considered  as they should be, as no one
not a member of the corporation can complain that there
was no resolution authorizing the signatures.

SMITH, J.    This suit questions the validity of an
improvement district in the city of Benton organized
for the purpose of purchasing an electric light plant from
a company which had allowed its franchise, obtained
from that city, to forfeit.    Several questions are raised
which we find it unnecessary to decide, as, in our opin-
ion, the petition of the property owners does not contain
a majority in value as required by the Constitution.

The court below found otherwise and prepared an
elaborate opinion discussing the various issues raised in
the case.    But in this opinion the court held that the
value of the railroad property lying in the city should
be excluded.    But, in connection with this finding, the
court also found that, if it was in error in excluding the
railroad property, the petition did not have a majority

in value; and there appears to be no doubt that such is the case.

The statute provides that, "in ascertaining whether the petition for improvement of any kind is signed by a majority of the owners in value of the real property in the district adjoining the property to be affected, the council shall take and be governed by the valuation placed upon the property as shown by the last county assessment on file in the county clerk's office. Women, married or single, may sign the petition; guardians may sign for their wards, and executors or administrators may sign for the estates represented by them." Section 5717, Kirby's Digest.

In regard to the assessment of railroads for general taxation purposes the statute provides that "the buildings and sidetracks of railroads shall be assessed as real estate, and each building or sidetrack shall be assessed in the incorporated town or district where located. Main track shall also be assessed as real estate, and it shall be apportioned for assessment and taxation between the several towns and school districts through which the railroads run according to the actual mileage in each town and district" (Sec. 14, Act 251, Acts 1911, p. 244), and that rolling stock, materials and stores shall be assessed as personal property, and that assessment distributed in the same manner. This assessment of railroad property is made by the State Tax Commission, and was properly made for the year in question, and the official certificate of the Commission showing the railroad assessment in the city of Benton was furnished to and filed with the clerk of the county court. In extending this assessment on the tax books, the clerk did not separate the real estate from the personal property, but extended the entire assessment on the personal tax book. He stated, however, that the assessment roll sent him by the Tax Commission did show the length of the main track and the value thereof, the length of the sidetracks and the value thereof, and the value of the buildings, in the city of Benton, and his explanation of his failure to

extend these assessments properly was that he did not know what part of the assessment to extend as personal property nor what part as real estate and he had, therefore, extended it all as personal property on the personal tax book. But, as appears from the statute quoted, the buildings, main track and sidetracks are assessed as real estate, and the clerk's lack of knowledge of this provision of the statute did not alter the character of the property. The case presented is not one where there has been a failure to assess the railroad property, for it was assessed, and properly so; and it will be observed that the statute does not require the determination of the question of the value of the property in the proposed district to be made from an inspection of the tax books, but the statute is that "the council shall take and be governed by the valuation placed upon the property as shown by the last county assessment on file in the county clerk's office."

The assessment of the railroad properties was on file in the clerk's office, and the railroad was no doubt required to pay the taxes levied on that assessment.

Had the railroad company desired this improvement and, by proper authorization, had signed the petition for it, we think, without question, it would have been proper for the value of its property, as shown by the last county assessment on file in the county clerk's office, to be taken into account, because, within the meaning of the statute, the assessment made by the Tax Commission is a part of the county assessment. And if this be true, it must also be true that the value of the railroad property should be taken into account in determining whether the requisite majority in value had been obtained by those who petitioned for the establishment of the improvement district. It follows, therefore, that the necessary majority has not been obtained, and the decree of the court will, therefore, be reversed, and the cause remanded with directions to enjoin the commissioners of the proposed district from further proceeding as prayed in the complaint.

SMITH, J. (on rehearing). Upon the petition for rehearing it is urged that the petition for the organization of the improvement district contained a majority in value of the property, even though the railroad assessment is included. Such appears to be the case, if we include in the sum total of the assessed values of the petitioners the property of certain petitioners who had no record title to the property assessed to them, and also the property of certain corporations. If either is excluded, the petition does not contain the necessary majority; if both are included, the petition does contain the necessary majority.

The general manager, who was also secretary and treasurer of the Owosso Manufacturing Company, testified that he signed the name of that corporation to the petition, but that there had been no resolution or other action of the board of directors authorizing him to do so. The secretaries of two other corporations who had signed the names of the corporation to the petition gave substantially the same testimony.

The names of these corporations were signed by the officers who would have signed the petition had authority in fact existed for that action. In such case it is proper to presume that authority for such signatures had been conferred, for, as we said in the case of *Malvern v. Nunn*, 127 Ark. 418, the board of directors possesses the authority to authorize the signing of the corporate name to such petitions, and the secretary is one of the executive officers who might perform that function. But that presumption is overcome here by the affirmative and undisputed testimony of these officers themselves that no authority to sign had been conferred upon them.

A presumption of ownership is also to be indulged in favor of persons in possession of, or who pay taxes on, lands to which they have no title of record; and it is urged that this presumption should be treated as conclusive, in as much as they might be owners under a will or by descent cast; and this court has held in the case of *Malvern v. Nunn, supra*, that such owners have the right to petition for the creation of improvement districts.

We think, however, that this presumption is only *prima facie.* And we are also of opinion that this *prima facie* presumption has been overcome by the testimony on the subject. Judge W. H. Evans testified that he had been a resident of Benton for many years, and had been judge of the circuit court for twelve years; that prior to that service he had been clerk of the circuit court and *ex-officio* recorder for six years, and that he owned a set of abstract books, and had been engaged in the abtract business. He testified that he checked over the petition and spent from two to three hours per day for eight or ten days in a diligent search to ascertain the source of title of the petitioners now under conideration, and that the petitioners had no deeds of record to the lands assessed to them. Many land owners negligently fail to have their deeds recorded, and such, no doubt, is the case here, but in the case of *Malvern* v. *Nunn, supra,* we said: ''Deeds of record in the recorder's office in the county at the time the council passes on the question is the criterion, in so far as the property represented by instruments subject to record is concerned.'' Under the showing made, the names of these petitioners were properly excluded.

The petition for rehearing will be overruled, as, upon a reconsideration of the record in the case, it appears that a majority in value of the property owners have not petitioned for the improvement.