HILL v. WALTHOUR.

Opinion delivered November 17, 1924.

MUNICIPAL CORPORATIONS—LIMIT OF COST OF IMPROVEMENT.—Under
    Crawford & Moses' Digest., § 5666, as amended by Acts 1921,
    p. 416, where the petition for a street improvement stipulated
    that the cost should not exceed 50 per cent. of the value of realty
    in the district, as shown by the last county assessment, *held* that
    the value of such realty must be determined solely from the last
    county assessment roll, and since, under § 9928, each lot is assess-
    able as a unit, lots of irregular size and shape partly within and
    partly without the district cannot be valued by extrinsic evi-
    dence of the value of the part included, nor by showing that the
    value of the substantial part excluded was small or negligible.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau,* Chancellor; reversed.

*Jean & Jones,* for appellant.

The assessors and commissioners in making assess-
ments are limited to the county assessment, and each lot
must be assessed as a unit, and not in parts. C. & M. Dig.,
§ 9928. Only such lots as lie wholly within the district
can be included for assessment, and when done the esti-
mated cost of the improvement exceeds even the total
valuation of property in the district.

*Rogers, Barber & Henry,* for appellee.

It is equitable to compute the assessed valuation
of all property which lies in the district, whether the
whole of the tract or lot is included or not.

McCULLOCH, C. J.    The city council of Little Rock
passed an ordinance, on petition of ten of the owners of
real property in the affected area, creating a street
improvement district for the purpose of paving parts
of certain connecting streets, and, within three months
after the publication of the ordinance, a petition, signed
by a majority in value of the owners of real property in
the district, asking for the construction of the improve-
ment, was presented to the city council. The last
petition contained a stipulation that the cost of the
improvement should not exceed fifty per centum of the
value of the real property in the district as shown by

the last county assessment. The city council found that the last petition contained a majority in value of the owners of real property in the district, and thereupon passed the second ordinance, appointing the board of commissioners of the district authorized by statute to construct the improvement. Plans were formed for the improvement, and the cost thereof was estimated to be $29,385.65. The commissioners, according to the allegations of the complaint in this action, have proceeded to assess benefits, and are about to proceed with the construction of the improvement.

Appellant is the owner of real property in the district, and instituted this action to restrain further proceedings on the ground that the estimated cost of the improvement will exceed fifty per centum of the value of the real property in the district as shown by the last county assessment.

An answer was filed by the commissioners of the district denying that the estimated cost would exceed the percentage stipulated in the petition of the property owners. There was a trial on this issue, and the court sustained the contention of the commissioners, and dismissed appellant's complaint for want of equity.

The decision of the case involves an interpretation of the statute enacted by the General Assembly of 1921 (Acts 1921, p. 416) amending § 5666, Crawford & Moses' Digest, the amendatory act reading, in part, as follows:

"The petition for such improvement, signed by a majority in value of the owners of the real property in the district, shall specify what percentage of the value of the real property in the district, as shown by the last county assessment, the said improvement shall not exceed in cost; and any improvement may be undertaken which in cost does not exceed the percentage of the value of the real property in the district specified in the petition."

The boundaries of the district included all land abutting on either of the streets to be improved and within one hundred and fifty feet of either of said streets, and it appears from the allegations of the complaint,

and the plat of the affected area, that most of the lots in the district are irregular in size and shape, so that some of them are more than one hundred and fifty feet deep and some less, and the result is that parts of some of the lots are beyond the boundaries of the district. This situation is more fully and accurately described in the opinion of this court in the recent case involving the validity of the organization of this district. *Hill* v. *Walthour,* 165 Ark. 243.

It appears, from the last assessment book of the county, that the aggregate assessed value of the lots lying wholly within the boundaries of the district is $24,080, which is less than the estimated cost of the improvement; but appellees introduced witnesses to prove that a fair apportionment, according to the last county assessment, of the parts of lots situated in the district, added to the assessed value of all of the lots lying wholly within the district, would amount to the aggregate sum of $64,400, which is more than double the estimated cost of the improvement.

It is the contention of appellant that, under the statute, the last assessment for county taxation affords the sole test of value without considering extraneous evidence, whereas the contention of counsel for appellees is that the statute means only that the county assessment list shall be accepted as the basis for ascertaining the value, and that, where a whole lot assessed as a unit lies partly inside and partly outside of the district, evidence may be taken to ascertain the proportionate value of that part of the lot lying inside of the district on the basis of the value of the whole as fixed by the county assessor.

We are of the opinion that the contention of appellant is sound and that the statute does not admit of any test of value other than the face of the assessment rolls. Similar language is used in the statute with reference to ascertaining the majority in value of property owners asking for the improvement (Crawford & Moses' Digest, § 5653), and we have decided that it means that the investigation must be confined to the face of the assessment,

without considering omitted property or property bearing a double assessment. *Improvement Dist. No. 1 v. St. Louis S. W. Ry. Co.*, 99 Ark. 508; *Malvern v. Nunn*, 127 Ark. 418.

In the case first cited above, the court, after reviewing the method of assessing property for county purposes, said:

"The valuation of the various properties thus made and placed upon the county assessment list gives, we think, with greater approximation, the true and uniform valuation of all the real property in an improvement district than any other mode of procedure. It is true that property may escape from the county assessment, but, under any other system or investigation, juridical or otherwise, this can and will occur. On account of the great divergence in the testimony of witnesses as to the value of property, the county assessment is a better criterion for determining the true valuation of all the property in any proposed district than a determination dependent upon such divergent testimony. If it is said that we should take the values of the real property, as shown by the county assessment list, and then find the real property which has been omitted therefrom to be added thereto, and, by the testimony of witnesses, determine the value of this omitted property, then it will be necessary to determine, from the conflicting testimony, the true value of such omitted real property, and, in order to equalize this value with that upon the county assessment, it will be further necessary to find and determine the actual value of all the property appearing upon the county assessment in comparison with its assessed value, so as to make equal and uniform the value that shall be placed upon the omitted property. Taking into consideration the care, diligence, and safeguards that are provided for in making the county assessments, we are of the opinion that, in comparison with any other system of procedure, it will give with greater approximation the true and uniform value of all the real property in any proposed improvement district.

The provisions of the statute prescribing that the city council shall be governed by the valuation placed upon the property as shown by the last county assessment, in fixing the value of property in a proposed improvement district as a basis for determining whether a majority in value of the property owners have signed the petition, does not, we think, contravene any constitutional requirement.''

It was the manifest design of the lawmakers, in making the last assessment list the sole evidence of value, to adopt a definite and certain test not dependent upon the judgment or discretion of any one except the assessing authorities of the county. The difficulty in the present case grows out of the unusual size and shape of the lots in the district, and this unusual situation could not have been in the minds of the framers of the statute. We take notice of the almost universal custom of laying out lots and blocks of uniform size in cities and towns, and our statute in regard to the duty of assessing officers for ordinary tax purposes to assess each lot separately as a unit: Crawford & Moses' Digest, § 9928.

The statute now under consideration was passed, doubtless, with reference to the provisions of the other statute just referred to, and there was no thought in the legislative mind of it becoming necessary to break up a unit of value adopted by the county assessor pursuant to statutory directions, in order to ascertain the proportionate value of a lot lying partly outside of an improvement district. It may result that the adoption of the face of the assessment list as the sole test of value of property in a district will thwart the plan for constructing the improvement, and might, as to property similarly situated, prevent the formation of a district. But that results, not from a defect in the law, but from the extraordinary and unusual circumstances affecting this particular district. The formation of a district is the voluntary act of the owners of property, under authority of the statute, and, in order to form such a district, they must bring themselves and the affected property within

the provisions of the statute. If the situation of a given area is so peculiar that the law does not admit of it being organized into an improvement district, the difficulty is, as before stated, not with the law, but arises from the peculiar facts. We must therefore construe the statute to mean that, in determining the percentage of value, the face of the assessment list must be looked to as the sole test, and that the value of a lot constituting a single unit of value for assessment purposes, lying partly inside and partly outside, cannot be considered and its proportionate value ascertained by evidence *aliunde*.

It is further contended that, according to the evidence adduced, the value of the parts of lots lying outside the district is negligible, and for that reason should be discarded and not considered. It is true that a witness testified that, in his opinion, the value of the lots outside the district was negligible, but that is a mere matter of opinion, and it was the design of the statute not to leave the question of value to the opinions of witnesses in an investigation by the court to determine that value, the statute having made the assessor's list the sole test. It certainly cannot be said that the area constituting the parts of lots outside the district should be excluded on the doctrine of *de minimis*. It is shown that substantial portions of the lots lie outside of the district, in some instances as much as fifty feet of the back end of the lots.

Our conclusion is that, according to the only test afforded by the statute, the cost of the improvement will exceed more than fifty per centum of the valuation of the real property in the district according to the last assessment, and that the commissioners have no power to proceed with the improvement.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to enter a decree in accordance with the prayer of appellant's complaint.