### FRY *v.* POE.

### Opinion delivered November 14, 1927.

1.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—CONSENT OF
    PROPERTY OWNERS.—Under Const., art. 19, § 27, a municipal cor-
    poration cannot construct a local improvement by assessment of
    benefits on real property, unless a majority in value of the
    owners of real property within the proposed district have con-
    sented thereto.
2.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—VALUATION OF
    LAND.—Crawford & Moses'. Dig., § 5653, providing that the city
    council should be governed by the valuation placed on the prop-
    erty as shown by the last county assessment in determining
    whether a petition for improvement is signed by a majority in
    value of the owners of realty in the district, is valid as fixing
    the method of procedure in determining the value of real prop-
    erty in the proposed district.
3.  MUNICIPAL CORPORATIONS—CONSENT OF PROPERTY OWNERS TO
    IMPROVEMENT.—The constitutional requirement that a majority in
    value of property owners within the proposed improvement dis-
    trict must consent to the improvement by assessment of benefits
    cannot be taken away under the guise of enacting a method
    of procedure.
4.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—OMISSION OF
    REALTY.—Where the procedure provided for the assessment of
    property in a proposed improvement district, contemplated the
    inclusion in the assessment of all the realty within the district,
    the statute is valid, although in the particular case property
    may have been omitted from the assessment roll for a particular
    year, since such omission is not the result of the statute, but
    is the fault of the assessing officer.
5.  TAXATION—RAILROAD RIGHT-OF-WAY.—The right-of-way and road-
    bed of the railroad are to be considered, for taxing purposes, as
    a unit from one end to the other, and hence are to be assessed by
    the State board, instead of by the county assessor.
6.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—ASSESSMENT
    OF RIGHT-OF-WAY.—Where the State board assessed a railroad

right-of-way and roadbed on the mileage basis, certifying same to the county officials to be used in making assessment for county purposes, and it was easy to calculate the proportionate part of the mileage assessment in the improvement district within the municipality, such assessment became part of the assessment roll, and should be considered by the council in determining whether a majority in value of the landowners have petitioned for the improvement.

7. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—ASSESSMENT OF ROLL.—It is the duty of the county clerk to certify the assessment by the State board of a railroad as part of the county assessment roll, to be used in determining whether a majority in value of the owners of realty in the improvement district have petitioned for improvement, as required by Crawford & Moses' Dig., § 5653.

8. EVIDENCE—SECONDARY EVIDENCE.—In a suit to enjoin commissioners from proceeding with an improvement on the ground that a majority in value of the owners of real property had not signed the petition for improvement, as required by Const., art. 19, § 27, admission by the county clerk that the assessment of railroad property in the district was left out by him and was on file in his office was equivalent to a refusal to certify the assessment of railroad property as part of the county assessment roll and to let in secondary evidence to prove the assessment.

9. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—MAJORITY OF OWNERS.—In a suit to enjoin commissioners from proceeding with an improvement on the ground that a majority in value of the property owners did not sign the petition for the improvement as required by Const., art. 19, § 27, evidence by the Secretary of State showing the assessment of the railroad property by the State board, *held* to show that a majority in value of the owners of realty within the district did not petition for the improvement, and hence entitled plaintiffs to the injunction.

Appeal from Garland Chancery Court; *W. R. Duffie,* Chancellor; reversed.

STATEMENT OF FACTS.

John W. Fry and other owners of real property in Street Improvement District No. 95 of the city of Hot Springs, Arkansas, brought this suit in equity against W. R. Poe and others, as commissioners of said improvement district, to enjoin them from forming plans and proceeding further with the improvement in said district, on the ground that a majority in value of the

owners of real property in said district had not signed the petition for the improvement, as required by our Constitution.

The facts necessary to a decision of the questions at issue on the appeal may be briefly stated as follows: According to the certificate of the county clerk, the total valuation of real property situated within the contemplated street improvement district in question, as shown by the last county assessment, exclusive of the railroad right-of-way, amounted to $78,200. Owners of real property of the assessed value of $41,500 signed the petition for the improvement. The county clerk was a witness in the case, and stated that he prepared the certificate of the real property within the boundaries of Street Improvement District No. 95 as shown by the assessment of 1925, which was the last assessment roll prior to the organization of the district. His certificate contains the total amount of the assessed value of property owned by private individuals and corporations, but does not include the right-of-way and roadbed of the Chicago, Rock Island & Pacific Railway Company, situated within the boundaries of the district. He was asked why no property belonging to said railroad company was included in his certificate,· and stated that it was just left out. The clerk prepared the list of property and the certificate at the request of one of the attorneys for the commissioners, and said that he just left out the railroad property.

The plaintiffs introduced in evidence a certificate from the secretary of the Arkansas Railroad Commission, showing the assessment of the right-of-way and other property of the Chicago, Rock Island & Pacific Railway Company in Garland County and in the city of Hot Springs, in that county. The secretary of said Arkansas Railroad Commission also testified that he had filed said assessment of said railroad company in the office of the county clerk of Garland County, Arkansas. According to the assessment, the main track of said railroad was $14,000 per mile, the sidetrack was $3,000 per

mile, and the rolling stock was $2,000 per mile. The assessment list also contained the buildings of the railroad company situated on its right-of way and a separate valuation of the same, which amounted to $10,087.

According to the testimony of a land surveyor, the length of the track of said railroad company within the limits of the boundaries of the district amounted to 2,016 feet. He was then asked to figure out what the assessed valuation of trackage would be under the assessment of the Arkansas Railroad Commission, and he testified that it would be something over $5,000. There were also 4,546 feet of sidetrack within the limits of the district. The county clerk also testified that, assuming that there were 2,016 feet of main track and 4,546 feet of sidetrack within the limits of the district, and taking said railroad assessments for 1925 as made by the Arkansas Railroad Commission, the proportionate assessed value of said main track would be $5,345.45 and of the sidetrack $2,582.95, making a total of $7,928.40.

The chancellor was of the opinion that the property of said railroad company situate on its right-of-way and its right-of-way situated within the limits of the district should not be considered by the court in determining whether or not the second petition for the formation of the district was signed by a majority in value of the owners of real property in the district. Consequently the chancellor found that a majority in value of the owners of real property within said district had signed the second petition, and that the city council properly established the district. It was therefore decreed that the action of the city council of Hot Springs in forming the district should be approved and confirmed, and that said street improvement district had been legally organized. It was further decreed that the complaint of the plaintiffs should be dismissed for want of equity. The case is here on appeal.

C. T. Cotham, for appellant.

Murphy & Wood, for appellee.

HART, C. J., (after stating the facts). Under § 27, art. 19, of our Constitution, a municipal corporation can-

not construct a local improvement by assessment of benefits on real property until and unless a majority in value of the owners of real property within the proposed district have consented thereto. We have many times held that this section of the Constitution is mandatory and jurisdictional, and that no improvement districts can be established within the limits of a municipal corporation without complying with its provisions.

In the case at bar the chancellor, in determining whether or not a majority in value of real property within the proposed district had signed the second petition provided by the statute for the establishment of said district, refused to take into consideration the assessed value of the right-of-way of a railroad company which had a part of its main track and of its sidetrack within the limits of the district. If the chancellor was correct in his interpretation of law as applied to the facts of the present case, the decree should be affirmed. On the other hand, if the right-of-way included in the limits of the boundaries of the district is to be counted as a part of the property shown by the last county assessment, then, under the undisputed facts, a majority in value of the owners of real property within the district did not sign a petition for the establishment of the district, and the city council had no power to establish the district, and the chancery court erred in not so holding.

The question thus raised by the appeal depends upon the construction to be placed upon § 5653 of Crawford & Moses' Digest, formerly § 5717 of Kirby's Digest, when read and considered in the light of our previous decisions construing it. The section reads as follows:

"In ascertaining whether the petition for improvement of any kind is signed by a majority of the owners in value of the real property in the district adjoining the property to be affected, the council shall take and be governed by the valuation placed upon the property as shown by the last county assessment on file in the county clerk's office."

This section of the statute has been held valid and to be a reasonable and proper method of procedure in

determining the value of the real property in an improvement district in a municipal corporation, to be used as a basis for finding whether or not the consent of a majority of the owers in value of real property in such districts has been obtained. *Kansas City, Pittsburg & Gulf Ry.* v. *Waterworks Imp. Dist. No. 1 of Siloam Springs,* 68 Ark. 376, 59 S. W. 248; *Imp. Dist. No. 1 of Clarendon* v. *St. Louis Southwestern Ry. Co.,* 99 Ark. 508, 139 S. W. 308; *City of Malvern* v. *Nunn,* 127 Ark. 418, 192 S. W. 909; *Walton* v. *Light Imp. Dist. No. 1,* 144 Ark. 249, 222 S. W. 1056; and *Hill* v. *Walthour,* 166 Ark. 277, 266 S. W. 85.

In *Craig* v. *Russellville Waterworks Imp. Dist.,* 84 Ark. 390, 105 S. W. 867, it was said that the constitutional limitation in question created a vested property right in owners of real estate in cities and towns, and that the only way the constitutional guaranty can be fulfilled is by the enactment of reasonable statutes of procedure to obtain the consent of a majority in value and a forum to determine whether such consent has been obtained. It is plain from all our previous decisions that the constitutional requirement cannot be taken away under the guise of enacting a method of procedure.

In the case first cited it was expressly held that our Constitution and statutes make all real estate situated within a proposed district in a municipal corporation the subject of local assessments, and that under our statutes rights-of-way of railroads, depot ground, etc., are real estate, and are to be assessed as such. In that case it was also held that under our revenue laws the right-of-way and roadbed of railroads should be valued as units or by the entire lines by a State board appointed for that purpose, and that, when their assessments are certified to the various counties, as provided by statute, they become a part of the county assessment from which values for local assessments are taken.

Our later cases have recognized that a railroad must be regarded, for purposes of taxation, as a unit, and that the track of the railroad is but one track from one end

of it to the other, and, except in its use as one track, is of little value.

It is true, as contended by counsel for the defendants, that, in some of the cases cited, this court has held that church property and other property exempt from general taxation should not be counted in determining whether or not a majority in value of the owners of real property within a proposed municipal improvement district have consented to the establishment thereof, unless such church property has been placed upon the taxbooks of the county by the proper officers. In doing so, however, the court has called attention to the fact that it is the duty of the assessing officers to list this property upon the taxbooks and place a valuation upon it for tax purposes. In *City of Malvern* v. *Nunn*, 127 Ark. 418, 192 S. W. 909, the court upheld the decision of the chancellor excluding school property because it had not been included in the last assessment roll. So it will be observed that church and school property, although exempt under our Constitution from general taxation, are subject to local assessments, and our statutes require the assessor to list churches, schoolhouses and other property, exempt from general taxation, and the value thereof. Crawford & Moses' Digest, § 9935.

Our statutes also authorize the listing and valuation and entering upon the assessment book of any such exempt property when it has been omitted at the regular time for making the assessment of real property subject to taxation. Crawford & Moses' Digest, § 9936. Hence the court expressly said that such property has a voice in the organization of the district according to its value fixed by the assessment roll. The court properly held that, if the assessing officer failed to do his duty for any particular year, it would not abrogate the statute nor prevent its application to the formation of improvement districts in cities and towns during that year. If he failed to do his duty, interested parties might require him to do so in order that the property might be counted in forming the district. If he did not do his duty, the

statute would apply to the assessment, and the omitted property could not be counted or considered in determining whether a majority in value of the owners of real property had petitioned for the formation of the district. The case would be the same as if the officer had failed to assess a particular lot or lots belonging to a private individual or corporation. In such a case the failure of the assessor to do his duty would not have the effect to prevent the statute from applying. The property could not be considered because it was not included in the assessment roll.

So, in the case at bar, if the State board had failed to assess or certify to the proper officer of Garland County the assessment of the right-of-way and roadbed of the Chicago, Rock Island & Pacific Railway Company in Garland County, it would not be reasonable to contend that this omission should suspend the operation of the statute or affect the interpretation of it. The railroad property simply would not be considered in determining whether a majority in value of owners of real property in the district had petitioned for the improvement.

The case would be quite different, however, if the statute under consideration had not provided for the inclusion of such property in the assessment roll. Under our statute, the right-of-way and roadbed of railroads are treated as real estate for taxation purposes, and, along with churches and schoolhouses, are subject to local assessments in municipal improvement districts. Hence a statute which provided for the exclusion of such property from the assessment roll to be considered by a municipal council in determining whether or not a majority in value of the owners of real property in a proposed municipal district would not be valid. The reason is that such a statute would disregard a plain provision of the Constitution, and would cease to be a statute providing a method of procedure to obtain the consent of real owners in forming a municipal improvement district and a basis by which to determine whether such consent has been obtained. The Constitution requires all property in the

district to be considered in determining such consent, and a statute which, by its terms, omitted any class or species of property, would be in conflict with the provision of the Constitution. It is one thing to hold a statute valid when it provides for the inclusion of all property in the assessment roll and the council should follow its provisions in the formation of municipal improvement districts, although the assessing officer has omitted a particular part of such property, and on that account it cannot be considered because not included in the assessment roll, and quite another thing to hold that a statute itself would be considered constitutional which, by its own terms, provided for the exclusion from the assessment roll of some class or species of property. In other words, if the plan or procedure provided by the statute contemplates the inclusion in the assessment roll of all the real property in the district, such a statute is reasonable and valid, although, in a particular case, property has been omitted from the assessment roll for that year, for the reason that such omission is not the result of the statute, but is the fault of the assessing officer. In such cases the Legislature has even provided for the inclusion in the assessment roll of such omitted property. If the Legislature should pass a statute which, by its own terms, omitted property in a municipal improvement district, it is plain that the statute itself contemplated a violation of the provision of the Constitution looking to the formation of municipal improvement districts, and for that reason the statute could not stand.

In this connection it may be stated that the decision of the chancellor was especially based upon the decision in *Hill* v. *Walthour,.* 166 Ark. 277, 266 S. W. 85. In that case it was held that a lot of irregular shape and size, which lies partly in and partly out of the district, should not be considered by the council in determining whether there was a majority in value of real property owners in the district favoring the improvement. The object of the statute under consideration is to secure equality and uniformity in ascertaining whether a majority in value

of the owners of real property wish the improvement. This can best be accomplished by taking the estimate of value placed upon the property by officers whose duty it is to assess property for taxation. Otherwise, the value of property being so much a matter of opinion, it would never be the same in any given case. The valuation of the property in different districts in the same city would vary greatly, and even property in the same area would be valued differently in different improvement districts. To illustrate, if two districts are formed at the same time with the same boundaries for the establishment of a street improvement district and a sewer district, if the testimony of witnesses should be used to fix the value of the property, it might be that the value of the property would be materially different in the two districts. If the value of the property as shown by the last assessment roll is to be determinative, then it is evident that the assessments will be equal and uniform in the two districts.

The case last cited referred to the fact that the formation of an improvement district is the voluntary act of the owners of real property, and they, in fixing the boundaries of the district, could put in or leave out a particular piece of property, and not place it partly in and partly out of the district. It was further stated that, if the inclusion of a certain area could not be done, such an exceptional condition would not and ought not to affect the general rule.

In the matter of the right-of-way and roadbed of a railroad, the situation is essentially different. As we have already seen, the right-of-way and roadbed of a railway company is to be considered for tax purposes as a unit, and the track and roadbed of the railroad are but one from one end to the other, and that part of it which could be in a municipal improvement district is, in the very nature of things, only a very small part of its length. Such property, on that account, has always been assessed by a State board instead of by county assessors. In this way only could equality and uniformity in taxation of such property be effected. Because a railroad must

be regarded as a unit for the purposes of taxation, it is taxed upon a mileage basis.

In the present case the State board taxed the property upon a mileage basis, and certified it to the proper officer of Garland County, to be used in making the assessment for county purposes there. The method adopted in ascertaining the assessed value of the railroad property in the improvement district is the only one that could be adopted. No element of uncertainty in fixing the value arises. The value is fixed by the State board, and the only element of uncertainty which could arise would be in measuring the length of the track and right-of-way in the district, and this would be negligible in all cases. It is easy to measure the length of the track in the contemplated district and thereby ascertain definitely the length of the track. The State board assessed the road-bed according to mileage, and it is easy to calculate what proportionate part of the mileage assessment should be borne by the railroad for trackage less than a mile in length. No element of estimating the value enters into the case, as when a part of a lot is in and a part out of the district, and the whole of a lot is assessed as one unity.

We think this holding is in accord with the principles decided in *Walton* v. *Commissioners of Light Imp. Dist.*, 144 Ark. 249, 222 S. W. 1056. In that case it was held that, in determining whether the required majority had been obtained for the establishment of a light improvement district in the city of Benton, the value of real property of railroad companies within the district must be considered. In discussing the question the court said:

"Had the railroad company desired this improvement and, by proper authorization, had signed the petition for it, we think, without question, it would have been proper for the value of its property, as shown by the last county assessment on file in the county clerk's office, to be taken into account, because, within the meaning of the statute, the assessment made by the Tax Commission is a part of the county assessment. And if this be true,

it must also be true that the value of the railroad property should be taken into account in determining whether the requisite majority in value had been obtained by those who petitioned for the establishment of the improvement district.''

It is sought to differentiate that case from this in the fact that the whole of the city of Benton was included in the improvement district, and that the assessment of the State board showed the exact mileage and valuation of the right-of-way and roadbed in the city of Benton. It is true that only a part of the area of the city is in the improvement district in the present case, but, if we should hold that railroad property could not be included, although assessed for taxation by the State board, such holding would result in excluding railroad property in improvement districts where the whole area of the town or city was not included within the district. In other words, the effect of such a holding would be to exclude from the consideration of the council in determining whether there was a majority in value of real property owners within a proposed municipal improvement district, a valuable class of property, although it had been assessed in the manner provided by law. This would violate the plain terms of the Constitution, and could not be done without rendering the statute invalid.

The result of our views is that we think that, when a State board has assessed the right-of-way and roadbed of a railroad company in accordance with law and has certified that value down to the proper county authorities, such assessment becomes a part of the assessment roll within the provisions of the statute in question, and should be considered by the council in determining whether a majority in value of the owners of real property have petitioned for the improvement.

Finally, it is insisted that the assessment of the State board was not proved by the best evidence. It is claimed that the county clerk should have certified the assessment of the State board of the railroad in question as part of the county assessment roll. This is true, and should be

the course pursued in general. In the case at bar, however, the county clerk admitted that the assessment of the railroad property was left out by him, and was on file in his office. This was tantamount to a refusal by him to certify the assessment as part of the county assessment roll, and let in secondary evidence to prove the assessment. The secretary of the State board was introduced as a witness, and made a certificate showing the assessment which was made by the State board, and also testified that this assessment was filed with the county clerk, where the law required it to be filed. According to the testimony of the county clerk himself, when the mileage assessment made by the State board of the railway property in question was considered with reference to the amount of main track and sidetrack proved to be in the district, a total valuation of $7,928.40 should be added to the assessment roll. It is only claimed that property owners owning real property in the district of the assessed value of $41,550 have signed the petition. The county assessment roll showed property within the district of the total value of $78,200. If we add to this, as we must do, the assessed value of the railroad property in the district, which was $7,928.40, we have a total of $86,128.40. Thus it will be seen that a majority in value of the owners of real property within the district did not petition for the improvement.

It follows that the chancellor erred in holding that a majority in value of the owners of real property in the proposed street improvement district signed the petition and in dismissing the complaint of the plaintiffs for want of equity. Therefore the decree will be reversed, and the case will be remanded with directions to grant the prayer of the complaint, and for further proceedings in accordance with the principles of equity and not inconsistent with this opinion. It is so ordered.