IMPROVEMENT DISTRICT NO. 1 OF CLARENDON *v.* ST. LOUIS

SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered June 26, 1911.

1. MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—CONSENT OF PROPERTY OWNERS.—Under art. 19, § 27, Const. 1874, providing that municipal corporations may authorize "assessments on real property for local improvements in towns and cities, under such regulations as may be provided by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected," *held* that the fact that the requisite number of property owners consented to the formation of an improvement district is jurisdictional, and without such consent all proceedings therefor are void. (Page 515.)

2. SAME—IMPROVEMENT—HOW CONSENT OF PROPERTY OWNERS ASCERTAINED.—Kirby's Digest, § 5715, providing that in ascertaining whether a petition for improvement of any kind is signed by a majority in value of the property owners, the council shall be governed by the last county assessment on file, the city council is concluded by the last county assessment, and should not consider property omitted therefrom. (Page 515.)

3. SAME—IMPROVEMENT—ASSESSMENT OF RAILROAD PROPERTY.—The entire real property of railroad companies within an improvement district, including the right-of-way, is assessable for local improvements that benefit such property. (Page 521.)

4. SAME—IMPROVEMENT—IMPEACHMENT OF ASSESSMENT.—The assessments of benefits returned by the board of assessors of an improvement district are presumed to be correct, and will not be disturbed until the contrary is shown, by evidence consisting not merely of opinions that the assessments are excessive, but of facts which overturn the *prima facie* fairness and equality of the assessments. (Page 522.)

Appeal from Monroe Chancery Court: *John M. Elliott,* Chancellor; reversed.

*Manning & Emerson,* for appellants.

1. While there was testimony on the part of appellee railway companies that the improvements would be no benefit to them except as to their depots, cotton platforms, cars upon tracks, furnishing water, sanitary conditions, etc., yet none testified that, even upon this basis, the assessment of benefits was excessive or inequitable. All the property of the railway companies in the district was subject to assessment of benefits. 68 Ark. 376, 380, 381. And this court has held that property is always benefited by local improvements, and "the attempt to show to the contrary would be useless in all instances." 70 Ark. 451-467. Even if witnesses had stated that the assessments were excessive, such testimony could not operate to set them aside, because the findings of the board of assessors and the city council as to the amount of benefits to the various parcels of property in the improvement district, and the assessment based thereon, are conclusive. 108 Pac. 186; 123 N. Y. 39. Where a remedy is provided by statute for parties who contend that assessments are illegal or excessive, injunction will not lie to prevent the collection of such assessments. 76 Atl. 250. Appellees, railway companies, brought no suit of the nature provided by law for the correction of assessments, nor within the time provided. Notice was given of the filing of the assessment with the city clerk, as provided by statute. No appeal was taken to the city council, and the only other statute giving the right to correct assessments (Kirby's Digest, § 5685) requires that suit be brought within 30 days after publication of the ordinance levying assessments. Not having done so, they are barred. 84 Ark. 257.

2. The petition for the establishment of the improvement was signed by a majority in value of the property owners within the district affected. The city council found "that said petition is found to contain and be signed by a majority in value of the real property owners within said city of Clarendon, Arkansas, and said improvement district adjoining the locality to be affected thereby as shown in the last county assessment on file in the county clerk's office for the county of Monroe, Arkansas," and this is the basis provided by law. Kirby's Dig., § 5717. The city council's finding on this point is presumed to be correct, and the

burden is upon the appellees to show that the petition was not signed by such majority, or that the proceedings were illegal. 84 Ark. 257; 128 S. W. (Ark.) 358; 88 Ark. 263, 266; 52 Ark. 301; *Id.* 353; 195 U. S. 223. The master's report shows on its face that the petition was signed by a majority in value of the property owners. He having been appointed upon the application and at the request of appellees, his finding is conclusive upon them. 74 Ark. 336; 85 Ark. 414; 91 Ark. 549. It has been held that, even when a master is appointed by the court upon its own motion, "if the court does not give to the findings of such master the weight which the evidence shows they are entitled to, its action will be reversed upon appeal." 92 Ark. 359. On the question of S. L. Jefferies' authority to sign certain names to the petition, he testified that all names signed by him were signed either by written or oral authority. "The burden was on appellees to show that the names of the property owners were not signed by authority." 84 Ark. 257. "Signatures to the petition may be by agent, and the authority of such agent will be presumed, or may be proved by evidence *dehors* the record." 28 Cyc. 977. And a corporation may sign by agent without direction of its board of directors. 58 Pac. (Ore.) 509-515. If a signature of a corporation to a petition was at the time unauthorized and the board of directors subsequently passed a resolution ratifying the signature to the petition, the corporation is bound by the act of the agent as effectively as if he had originally been given express authority. 11 Ark. 189; 84 Ark. 263; 28 Cyc. 977.

*J. C. Hawthorne,* for St. Louis Southwestern Railway Company, *J. S. Thomas, Sr.,* for himself and others, and *James H. Stevenson,* for Arkansas Midland Railway Company.

1. The decision of the chancellor will not be reversed on the evidence unless it is against the clear preponderance thereof, and not supported by evidence which might fairly be said to have discharged whatever burden rested upon the appellees. 68 Ark. 314; *Id.* 134; 71 Ark. 605; 73 Ark. 489; 67 Ark. 200; 75 Ark. 52; 72 Ark. 67. The presumption insisted upon by appellant that the finding of the city council as set out in the ordinance is correct is not controlling on the court in weighing the evi-

dence. Such presumption prevails only in the absence of evidence to the contrary. There is no authority for appellant's contention that the findings of the chancellor should be set aside if the evidence is evenly balanced. The law is to the contrary. 77 Ark. 305. While it is true that the master was appointed on petition of one of the appellees, which appointment was resisted by appellant, yet the order appointing him refers to him certain enumerated facts for ascertainment, and the court reserved "the right to pass upon the correctness of any and all the findings of the master." His report and findings are not conclusive on either party, and the court could, either on its own motion or on exceptions filed, confirm or reject all or any of his findings. 92 Ark. 359; 91 Ark. 359, 553.

2. While it is true that *prima facie* "all the property of the railroad company was subject to assessment of benefits," yet it is a question open in every case to proof, and if certain property of the company, assessed in the district, can be shown to receive no possible benefit, while other portions may be benefited, the assessment will be confined to the portions so benefited. 68 Ark. (376), 380.

*Manning & Emerson,* for appellant in reply.

Appellees' complaints allege that the assessment "is excessive, unwarranted and equivalent to confiscation," but do not specify in what respect it is so. The courts will not review a local assessment on such general allegations. 98 Ark. 113.

FRAUENTHAL, J. These were suits instituted by the appellees attacking the validity of the formation of an improvement district in the city of Clarendon for the purpose of constructing a waterworks, sewerage system and artesian well, and seeking to restrain the collection of assessments made upon their property therefor. Under and in pursuance of sections 5665 *et seq.,* of Kirby's Digest, and laws amendatory thereof, the city council of the city of Clarendon laid off the entire city into one improvement district for the purpose of making the above improvement, and duly enacted and published an ordinance establishing said improvement district. Within the time prescribed by said statutes, a petition purporting to be signed by a majority in value of the owners of real property within said district was presented

to the city council, praying that said improvement be made, and the costs thereof assessed upon the real property situated in the district. The city council found that said petition was signed by a majority in value of the owners of real property within the district to be affected by the improvement, and further proceedings were thereupon had within the time and manner prescribed by said statutes for the appointment of the various boards and officers therein designated, who took the various steps and performed the various duties required by said statutes. The board of assessors duly made and filed an assessment of the value of all benefits accruing to the real property in the district by reason of the proposed improvement, of which notice was duly given. No appeal was taken to the city council by any one from the assessment so made and filed. Thereafter the city council passed an ordinance assessing the real property in the district for the payment of the benefits according to the assessment list made by said board of assessors in the manner and form prescribed by section 5684 of Kirby's Digest.

Within thirty days after the passage of the above ordinance, the appellees, the St. Louis Southwestern Railway Company, and the Arkansas Midland Railroad Company, filed these separate suits, and made substantially the same allegations in their complaints. They alleged a number of grounds upon which they based their attack upon the validity of the formation of said improvement district and their contention that the collection of the assessments made upon their property should be enjoined. Only two of these grounds are pressed by them upon this appeal:

First, because a majority in value of the owners of real property within the district did not sign the petition for the formation of the improvement district; and,

Second, because the assessment of the benefits against their property was excessive, unjust and unequal.

Some time after the expiration of thirty days from the passage of the above ordinance assessing said benefits, certain individuals asked to be made parties plaintiff to one of the above suits, and asked for the same relief therein prayed for, and this request was granted by the chancellor.

The appellant, the improvement district, filed answers to the said complaints, denying the material allegations thereof, and also made same cross complaints, in which it sought a recovery of the assessments against the several lots and parcels of real estate owned by the appellees, which, during the pendency of the suits, had fallen due. The two suits proceeded as consolidated, and during the progress of the proceedings the chancellor, upon motion of the appellees, appointed a master to take testimony, with directions to make a report, among other things, upon the following matters:

To ascertain the assessed value of the real estate in the improvement district and to make the railroads' property a separate item;

To ascertain the assessed value of real estate owned by individuals who signed the petition;

To ascertain the assessed value of real property owned by firms or partnerships who signed the petition, and whether all members thereof signed or a portion, and, if a portion, the value of their interest;

If the petition was signed by an agent, to state the facts of his authority to so sign;

If signed by a guardian or administrator, to show the value of the real estate as shown by the assessment;

Also to ascertain the assessed value of real estate owned by corporations, and by whom the petition was signed for said corporations, and whether there was a resolution authorizing such signature.

The master reported that the value of the real property as assessed by the county assessor within the corporate limits of Clarendon, which comprised the said improvement district, other than that owned by the railroads, was $275,030, and that the total assessed valuation of the property of railroad therein was $31,205. But it appears that the assessed valuation of the railroad property within the district was made from a certification thereof received from the Board of Railroad Commissioners, and from this it appears that the assessed value of the real property owned by said railroads in said district amounted to $28,387, and that the remainder of the assessed value of said railroad property was personal property, consisting of their rolling stock.

The master also made an itemized statement of each lot, block and piece of property which was owned by individuals who had signed the petition, together with the assessed value thereof, and the total assessed value of the real property owned by said individuals who had signed the petition amounted to $166,967.57. He also made a report showing the various pieces of real property within said district, which had not been assessed by the county assessor, which consisted of property owned by the various churches in said city, and also by individuals. He also reported the assessed value of the various pieces of property owned by partnerships and corporations whose signatures appeared upon the petition, stating by whom such signatures were made and the authority therefor. It appears also from this report that a number of owners of real property which did not appear upon the county assessment had signed the petition. The testimony of a number of witnesses was taken relative to the value of the property owned by the several churches and the several pieces of property which were owned by individuals which had escaped assessment by the county assessor. The testimony given by these witnesses is conflicting as to the values of these various properties, and the master returned this testimony without making any finding as to the values thereof.

The chancellor, in determining whether or not there was a majority in value of the owners of property within the district who had signed the petition asking for its formation, took into consideration the value of the real property which did not appear upon the county assessment list as shown by the testimony, and from this and the assessed value of the real property appearing upon said county assessment list he found that a majority in value of the owners of real property within the proposed improvement district did not sign the petition for the formation thereof, and thereupon entered a decree perpetually enjoining the enforcement of the ordinances establishing said improvement district, and the collection of the assessments made thereunder upon the property of the appellees.

The questions presented by this appeal for our determination are: (1) Whether a majority in value of the owners of real property within the improvement district signed the petition seeking and consenting to its formation; and (2), if so, whether

the appellees or any of them were entitled to any relief from the assessments of the benefits made against their respective properties.

1.   In order to determine whether a majority in value of the owners of real property within said improvement district signed the petition asking and consenting to its formation, it is necessary to first determine the legal basis upon which to estimate the total value of the real property situated therein. By section 27 of article 19 of the Constitution of 1874, it is provided: "Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities, under such regulations as may be provided by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform."

The Legislature within the exercise of its proper power has imposed upon the various town and city councils the duty and authority to form local improvement districts within their limits.   Under the above provision of the Constitution, there can be no power or authority vested in municipal councils to make assessments for the construction of local improvements within the limits of municipalities until and unless the consent of the requisite proportion of the owners of real property to be affected thereby has been obtained.   The fact that the requisite number of property owners has consented to the formation of a local improvement district is jurisdictional, and is in the nature of a condition precedent for the exercise of such power by the municipal council, and without such consent first obtained all proceedings therefor are null and void.   *Craig* v. *Russellville Waterworks Imp. Dist.*, 84 Ark. 390; 3 Dillon, Municipal Corporations (4 ed.), § 800; Hamilton on Special Assessments, § 327; *Ogden City* v. *Armstrong*, 168 U. S. 224; *Sharp* v. *Speir*, 4 Hill 76; *Morse* v. *Omaha*, 67 Neb. 426; *Mulligan* v. *Smith*, 59 Cal. 206; *Allen* v. *Portland*, 35 Ore. 420.

In order to ascertain this fact as to whether or not a majority in value of the property owners have signed the petition for, or consented to, the formation of an improvement district, it is perfectly proper and legitimate for the Legislature to prescribe

a procedure to obtain such consent and a plan and basis by which to determine whether such consent has been obtained. It is common knowledge that one of the most difficult and perplexing questions is to fix and determine the value of property. Intelligent men differ as to the value of the most common piece of property that may be shown them, and at last the most that can be expected is to arrive only at a fair approximation of the value of property. For the purposes of general taxation, the Legislature ordinarily appoints an officer or board, with boards of revision, to fix the valuation of property; and it has been held that such provisions meet every constitutional requirement. In like manner, the Legislature may, without violating the provision of the Constitution requiring the signing of a majority in value of the property owners before it can authorize assessments for local improvements in towns and cities, designate a method for determining the valuation of the real property when a fair opportunity is given under such method or plan to the property holder to be heard.

By section 5715, Kirby's Digest, it is provided: "In ascertaining whether a petition for improvement of any kind is signed by a majority of the owners in value of the real property in the district adjoining the property to be affected, the council shall take and be governed by the valuation placed upon the property as shown by the last county assessment on file in the county clerk's office." By other statutes it is provided that every lot and piece of property situated in towns and cities shall be listed upon the county assessment and duly valued by proper officials. Not only are the values thus fixed arrived at by experienced officers under due and proper sanction, but provision is also made by statute for a hearing of every property owner before these officers and before boards of review. Not only is the value of property owned by individuals, firms and corporations assessed by the county assessor, but also the property owned by churches and other bodies which ordinarily are exempted from general taxation.

By section 6987 of Kirby's Digest it is provided: "The assessor, at the time of making assessments of real property subject to taxation, shall enter in a separate list pertinent descriptions of all burying grounds, public schoolhouses, houses

used exclusively for public worship, and institutions of purely public charity, and public buildings and property used exclusively for any public purpose, with the lot or tract of land on which said house or institution or public building is situated, and which are by law exempt from taxation, and the value thereof."

It will thus be seen that the assessed value of church property, which is subject to assessment for local improvements, is required by law to be placed upon the county assessment list, as well as the assessed value of all other property. Finally, after the assessor has performed his duty in placing every lot and piece of property in towns and cities on the county assessment list, the county clerk is authorized to place thereon any lot or piece of property that may have been inadvertently omitted. Kirby's Digest, § 7014.

It is further provided by statute that these assessed values shall be duly equalized so as to make them uniform and as just as can be fixed by any ordinary plan that can be devised before the value of these properties are finally placed upon the county assessment list. Section 7007.

The valuation of the various properties thus made and placed upon the county assessment list gives, we think, with greater approximation the true and uniform valuation of all the real property in an improvement district than any other mode of procedure. It is true that property may escape from the county assessment, but under any other system or investigation, juridical or otherwise, this can and will occur. On account of the great divergence in the testimony of witnesses as to the value of property, the county assessment is a better criterion for determining the true valuation of all the property in any proposed district than a determination dependent upon such divergent testimony. If it is said that we should take the values of the real property, as shown by the county assessment list, and then find the real property which has been omitted therefrom to be added thereto, and by the testimony of witnesses determine the value of this omitted property, then it will be necessary to determine from the conflicting testimony the true value of such omitted real property, and, in order to equalize this value with that upon the county assessment, it will be further necessary

to find and determine the actual value of all the property appearing upon the county assessment in comparison with its assessed value so as to make equal and uniform the value that shall be placed upon the omitted property. Taking into consideration the care, diligence, and safeguards that are provided for in making the county assessments, we are of opinion that, in comparison with any other system of procedure, it will give with greater approximation the true and uniform value of all the real property in any proposed improvement district. The provisions of the statute prescribing that the city council shall be governed by the valuation placed upon the property as shown by the last county assessment in fixing the value of property in a proposed improvement district as a basis for determining whether a majority in value of the property owners have signed the petition does not, we think, contravene any constitutional requirement. In speaking of a mode for determining whether or not a majority in value of the property owners has been obtained, so as to meet this constitutional requirement, this court in the case of *Craig* v. *Russellville Waterworks Imp. Dist., supra,* said: "The only way in which this constitutional requirement can be fulfilled is by the enactment of such a statute as section 5667 *et seq.,* of Kirby's Digest, wherein a certain procedure is prescribed to obtain the consent of a majority in value, and a forum to determine whether such consent has been obtained. When such a plan is devised, then the local improvement may be undertaken, provided a majority in value consent thereto; and when it is determined in a forum where property owners may have their day that such majority has consented, then a legal basis is laid, and the improvement may be undertaken."

In the case of *Lenon* v. *Brodie,* 81 Ark. 208, the court held (quoting syllabus) that "in ascertaining the value of the property of churches and private schools for the purpose of forming an improvement district, the city council is required, by Kirby's Digest, section 5717, to be governed by the valuation which the assessor is required by Kirby's Digest, section 6987, to place upon such property."

In the case of *Alford* v. *State,* 69 Ark. 436, the court had before it the question as to whether or not the Legislature could adopt a method for determining the number of electors in a

township so as to determine therefrom the number of justices of the peace to which it was entitled under the provisions of the Constitution. The Constitution provided that "for every two hundred electors there shall be elected one justice of the peace." (Constitution 1874, art. 7, § 39.) By the act of February 16, 1893, the Legislature prescribed that, "in ascertaining the number of justices of the peace to be voted for and commissioned, the number of votes cast in the general election next preceding shall be taken as conclusive of the number of electors in the township." In that case it was contended that said legislative act furnished no just criterion for determining the number of justices of the peace to which a township is entitled, for the reason that it was based on votes cast two years previous thereto. In that case the court said: "It was the duty and within the province of the Legislature to adopt some method of determining the number of electors in a township, in order to determine therefrom the number of justices of the peace to which it is entitled. * * * The act in question was doubtless the embodiment of the very best method the Legislature could conceive of under the circumstances. This being the case, we do not feel at liberty to declare the enactment unconstitutional."

We conclude that the Legislature was authorized to prescribe a method for determining whether a majority in value of the owners of real property within an improvement district had consented thereto, and in adopting such a plan to fix as a basis for such determination the valuation placed upon property by the last county assessment. This the Legislature has done by the provisions of section 5717 of Kirby's Digest. It has been the uniform practice in this State, under the above statute, in taking steps for the formation of improvement districts in towns and cities, to be governed by and to consider as controlling the valuation of each lot and piece of property as it appears on the county assessment list, even though other testimony might show different values. In like manner we see no reason why the total valuation of the real property in a proposed improvement district should not be controlled and governed by the amount of the total valuation thereof as shown by said county assessment list. By that statute we are of opinion that the Legislature has prescribed that the total value of all the real property in an im-

provement district shall be evidenced and determined by the total valuation placed upon .the property therein as shown by the last county assessment, and that the value of each lot and parcel of real property therein shall be evidenced and determined by the valuation placed thereon in said assessment. This holding is not in conflict with any ruling made in the cases of *Ahern* v. *Board of Improvement,* 69 Ark. 68, *Earl* v. *Board of Improvement,* 70 Ark. 211, and *Board of Improvement* v. *Offenhauser,* 84 Ark. 257.

In these latter cases the court permitted the value of church property, which was omitted from the county assessment, to be added to the valuation of the property of the district, as shown by the county assessment. But in none of said cases did the court decide that the value of such omitted property was required to be considered in determining the total value of the property in the district, or that such total value should not be governed by the last county assessment. In each of these cases it was only decided that, even if the value of the omitted property was added to the total valuation placed on the property in the district by the county assessment, still a majority in value of the property owners consented thereto.

In the case at bar the undisputed evidence shows that the total valuation placed upon the real property in said improvement district as shown by the last county assessment is as follows: On all real property, except that owned by railroad companies, $275,030; and upon all real property owned by railroad companies, $28,387; making a total valuation of all real property in the district, as shown by said county assessment, of $303,417. Under the law, this was the evidence, and fixed the total valuation of all the real property in the improvement district for the purpose of determining whether a majority in value of the property owners had consented to the formation thereof. An amount, therefore, in excess of $151,709 would be a majority thereof. The undisputed evidence shows, and it is so conceded by the appellees, that the valuation of the real property of owners purporting to have signed the petition asking for the formation of this improvement district as appears from the county assessment list amounted to $166,967.

It is contended by appellees that certain persons signed the petition who were not owners of property in the district, and that others signed same as agents who were not authorized to do so by the owners thereof. The total valuation of the property which appellees contend should be deducted from said petition for these and all other reasons assigned by them amounts to $13,750. While we do not think that the contention of appellees as to all these signers of the petition, whose property they claim should be deducted, is correct, yet if it should be held that their contention in this regard is correct, and we should deduct this amount from the above conceded valuation of the property owned by the purported signers of the petition, it would still leave a valuation of $153,217 of the real property whose owners had consented to the formation of the district, and this is a majority in value of the real property in the district. It follows, therefore, that the chancellor erred in finding that a majority in value of the owners of real property in the said improvement district did not sign the petition asking for its formation, and in deciding that said improvement district was not legally formed on that account.

2. It is urged by the appellees, the railroad companies, that the amount of the benefits which were assessed against their property was excessive and unjust, and also unequal in comparison with the benefits assessed upon other property in the district. It is not contended that no benefits would be derived by their property from the construction of the improvement. It has been held that the entire real property of railroad companies within an improvement district, including the right-of-way, is assessable for local improvements that benefit such property. *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist.,* 68 Ark. 376. When the assessment of the benefits arising from, and the proportionate cost of, a local improvement has been made upon the property specifically benefited thereby, by the proper officials in the manner prescribed by law, it devolves upon the party attacking same to show that the amount of these assessments is excessive or unequal. It has been held that the amount of the benefits which such officers have found and determined to accrue to each lot and parcel of real property in a district by reason of the improvement will be presumed to be correct and

just, and the courts will not disturb same until the contrary has been shown by the evidence. Such evidence must consist, not merely of opinions that the assessments are excessive, but of facts which "will overturn the *prima facie* fairness and equality of the assessment established by the returns of the assessors." *Overstreet* v. *Levee District,* 80 Ark. 462; *Driver* v. *Moore,* 81 Ark. 80; *Board of Imp.* v. *Offenhauser, supra; Osborne* v. *Board of Imp.,* 93 Ark. 563; *Board of Imp.* v. *Pollard,* 98 Ark. 543.

In the case of *Moore* v. *Board of Directors,* 98 Ark. 113, we said: "Nor can the courts review merely on general allegations that the assessments are arbitrary, excessive and confiscatory. Facts must be pleaded which show that the decision of the lawmakers was not only erroneous, but that it was manifestly outside of the range of the facts."

Likewise, it will not be sufficient to prove that the assessment of the benefits made by the proper board of assessors is excessive or unequal simply by general statements to that effect; but facts must be produced in evidence which will show that such assessments are excessive or unequal. In the case at bar, the testimony on the part of the appellees shows that their property will receive substantial benefits from the proposed improvement; and the testimony which they have introduced to show that the assessment thereof is excessive consists only of general statements to that effect, which are in the nature of opinions. There were no concrete facts introduced in evidence showing that these assessment are excessive, or to what extent they are in excess of what is fair and right. The testimony which the appellees introduced to prove that these assessments are unequal consisted likewise only of general statements to that effect. There was no concrete instance of a comparison made between the amount of the assessments placed upon the railroad property and the property of other owners in the district so as to show that there is an inequality in the assessments.

Upon an examination of all the evidence relative to these benefits, we do not find that it is sufficient to overturn the fairness and equality of the assessments as made by the board of assessors of this improvement district. The chancellor made no finding of fact relating to these benefits, and we conclude that

the contention of appellees that the assessments of the benefits made upon their property is excessive or unequal is not sustained.

The decree of the lower court will therefore be reversed, and this cause will be remanded with directions to dismiss the complaints and to grant a decree in favor of the appellant upon its cross complaints for the recovery of all the assessments due and unpaid, together with penalty and all such costs and attorneys' fees as are provided for in section 5695 of Kirby's Digest; and for further proceedings.