## HENRY *v.* BOARD OF IMPROVEMENT OF PAVING DISTRICT No. 3.

## Opinion delivered March 8, 1926.

1. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—DESCRIPTION OF BOUNDARIES.—The proceedings in the creation of a municipal improvement district are void on their face unless they contain a description of the boundaries of the district, so that it can be definitely ascertained what territory is included.

2. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—EVIDENCE AS TO ORGANIZATION.—The boundaries of a municipal improvement district must be determined by the face of the petition and ordinance, and cannot be varied by oral testimony, which is admissible only for the purpose of explaining the terms in which the description of the boundaries is expressed.

3. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—PRESUMPTION AS TO ORGANIZATION.—Under Crawford & Moses' Dig., § 5652, providing that a city or town council shall determine whether the signers of a petition for the creation of an improvement district constitute a majority in value of the property owners therein, and that the finding of the council shall be conclusive unless suit to review it is brought within 30 days, *held* that on such review the finding of the council is *prima facie* correct, and the burden is on the attacking party to show that a majority failed to sign the petition.

4. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—ACTION OF COUNCIL.—In a suit attacking a municipal improvement district upon the ground that the petition for its creation did not contain a majority in value of the property owners, there is no requirement that the proceedings before the city council be reduced to writing, and no inquiry will be permitted as to the manner in which the council arrived at its conclusion.

5. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—DIRECT ATTACK.—Landowners within a municipal improvement district who did not appear before the city council and object to the creation of the district will not be heard, on a direct attack, to complain that certain promoters of the district unfairly dissuaded them from appearing before the council.

6. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—IMPRACTICABILITY.—Where an improvement district has been organized in the manner prescribed by the statute, having been authorized by a majority in value of the property owners in the district, the organization will not be invalidated because it is impracticable at this time to construct the improvement.

Appeal from Benton Chancery Court; *Lee Seamster,* Chancellor; affirmed.

*W. O. Young,* for appellant.

*A. L. Smith,* for appellee.

McCULLOCH, C. J.    An improvement district was formed in the city of Siloam Springs for the purpose of paving connected portions of certain streets in that city.    The district was created by the city council in accordance with statutory provisions (Crawford & Moses' Digest, § 5649) on the petition of ten owners of real property within the boundaries of the proposed district.    Within ninety days after the creation of the district a petition purporting to be signed by a majority in value of the owners of property within the district was presented to the city council in accordance with the statute.    Crawford & Moses' Digest, § 5652.    Due notice of the presentation was published, and the council, after considering the petition, found that it contained the signatures of the owners of a majority in value of the real property in the district, and an ordinance was duly enacted appointing the commissioners to construct the improvement.    Within thirty days thereafter, appellants, who are the owners of property within the district, instituted this action in the chancery court against the district and its commissioners to restrain further proceedings, on the ground that the district was not legally organized, and that the petition for the improvement was not signed by a majority in value of the owners of property. On the trial of the case the court found against appellants, and dismissed their complaint.

The first contention of appellants is that the organization of the district is invalid because the description of the boundaries is so indefinite and uncertain that the property to be affected by the improvement cannot be ascertained.    It has been settled by decisions of this court that the proceedings in the creation of a municipal improvement district are void on the face thereof unless they contain a description of the boundaries of the dis-

trict, so that it can be definitely ascertained what territory is included. *Bell* v. *Phillips,* 116 Ark. 167. It does not appear, however, that there is any uncertainty about the description of the boundaries. In the original petition of property owners, and in the ordinance of the city council creating the district, the boundaries are described by metes and bounds, and also by particular description of each lot or tract embraced within those boundaries. If any variance should appear in the two methods of description thus adopted, the particular description of the separate lots and tracts would necessarily control, but it does not appear from the face of the proceedings that there is any variance between the two. The only basis of the contention of appellants is the testimony of a witness who expressed the opinion that the boundaries of the district extend farther at a certain point than indicated by the description of the particular lots. The boundaries must be determined, of course, by the face of the petition and ordinance, and cannot be varied by oral testimony. Such testimony could only be received for the purpose of explaining the terms in which the description of the boundaries is expressed. The testimony of this witness throws little, if any, light upon the question of the boundaries, and, as before stated, it only amounts to an expression of his opinion as to the extent of those boundaries. It devolves upon those attacking the validity of the description to point out the defects, and our conclusion is that the attack in this respect is unsuccessful.

The principal attack upon the validity of the proceedings is that the petition for the improvement was not signed by the owners of a majority in value of the real property in the district. The statute in relation to the petition for the improvement (§ 5652, *supra,*) reads as follows:

"If, within three months after the publication of any such ordinance, persons claiming to be a majority in value of the owners of real property within such district

adjoining the locality to be affected shall present to the council a petition praying that such improvement be made, which petition shall designate the nature of the improvements to be undertaken, and that the cost thereof be assessed and charged upon the real property situated within such district, the city clerk or town recorder, by order of the city or town council, shall give notice by a publication once a week for two weeks, in some newspaper published in the county in which such city or town may lie, advising property owners within the district that on a day therein named the council will hear the petition and determine whether those signing the same constitute a majority in value of such owners of real property. At the meeting named in the notice, the owners of real property within such district shall be heard before the council, which shall determine whether the signers of said petition constitute a majority in value, and the finding of the council shall be conclusive unless within thirty days thereafter suit is brought to review its action in the chancery court of the county where such city or town lies. In determining whether those signing the petition constitute a majority in value of the owners of real property within the district, the council and the chancery court shall be guided by the record of deeds in the office of the recorder of the county, and shall not consider any unrecorded instrument. (When so determined) the city council shall at once appoint three persons, owners of real property therein, who shall compose a board of improvement for the district.''

This action was, as before stated, commenced within thirty days after the city council made its findings and appointed the commissioners, hence the attack upon the proceedings is direct and not merely collateral.

Oral testimony was introduced by appellants in an effort to show that the petition was not signed by a majority, but, after careful examination of the testimony, we are of the opinion that it is not sufficient to overturn the findings of the city council that the peti-

tioners constituted a majority in value.   The first question arising on this branch of the case is, where the burden of proof rests in a proceeding of this kind.   It does not appear that this court has ever directly decided that question.   In all the cases referred to in the brief of counsel there was involved a collateral attack upon the validity of the proceedings under former statutes, and we held, of course, that the burden of proof rested upon the attacking party to show that a majority had not signed the petition.   Now, it will be observed, from the language of the statute now in force, that the finding of the city council is conclusive "unless within thirty days thereafter suit is brought to review its action in the chancery court."   This is a provision for a direct review—an independent investigation and inquiry, and not a mere review for errors—but it is nevertheless a review to determine whether or not the findings of the city council are in accordance with the facts.   Therefore, in the very nature of things, the findings of the council must be treated as *prima facie* correct, and the burden rests upon the attacking party to show to the contrary. This is true because the statute places the inquiry primarily with the city council to determine the facts concerning the majority, and a review of the proceedings before the city council contemplates the treatment of the findings as *prima facie* correct.

Appellants rely almost entirely upon the testimony of Miss Patton, the county clerk, to sustain their attack upon the findings of the city council with reference to the majority signing the petition.   The witness testified with the tax records for the preceding year before her.   She did not pretend to be familiar or to have any information at all with reference to the boundaries of this district, but she only gave testimony with reference to the assessed valuation of particular lots and tracts in Siloam Springs, about which she was interrogated.   There is a controversy between counsel in the case as to whether or not she was asked concerning all of the tracts and lots within

the boundaries of the district, but, be that as it may, it is certainly true that her testimony does not establish the facts concerning the value of the property owned by the petitioners. A list appears in the record, and there is a controversy as to whether it is properly in the record, but we find it unnecessary to determine that, for the reason that, even if we treat the list as being properly in the record, it does not establish the ownership of all the lands of the petitioners. The statute provides how the ownership shall be ascertained, and, in the absence of direct testimony showing that the petitioners were not the owners of a majority in value of the property in the district, we must indulge the presumption that the city council heard evidence and correctly determined, upon the basis prescribed in the statute, that the petitioners constituted a majority in value of the owners of property in the district. There is no requirement in the statute that the proceedings before the city council shall be reduced to writing, and it is not proper to permit an inquiry in this action as to how the city council arrived at the conclusion. Until the *prima facie* effect of the findings of the city council is overturned by evidence, we must, as before stated, indulge the presumption that only legal evidence was heard, and that the finding was made upon the basis prescribed by the statute.

It is next contended that there was unfairness on the part of some of the promoters of the district in preventing property owners from having an opportunity to be heard before the city council when the petition was being considered. Two of the witnesses related that, when the council considered the petition, they made inquiry and met a Mr. Osborn at the door, who told them that there was "no use going in there; they won't tell you anything," and that one of the promoters, when asked if they could see the petition, replied that he had it in his pocket, and it was going to stay there. These witnesses did not actually appear before the council and demand a hearing, but relied upon the statements of those persons

who met them on the outside of the council chamber. In any view of the matter, it cannot be said that this constituted a denial of a hearing before the city council. The witnesses, if they desired to be heard, should have gone into the council chamber and asked for a hearing. It is true that the party who informed the witnesses that he had the petition in his pocket and would keep it there was the city attorney, but he had no authority to represent the city council in the hearing, and, notwithstanding his alleged statement to the witnesses, they could have gone into the council and asked for a hearing, if they desired to be heard on the question whether the petition had been signed by a majority.

Finally, it is insisted that the organization should be invalidated because it is impracticable at this time to construct the improvement. That is a matter that cannot be considered at this stage of the proceedings, after the district has been organized in the manner prescribed by the statute and the improvement authorized by a majority in value of the owners of property in the district.

The chancery court was correct in dismissing the complaint, and the decree is in all things affirmed.