DUNBAR v. STREET IMPROVEMENT DISTRICT No. 1 OF DARDANELLE.

Opinion delivered January 17, 1927.

1.  MUNICIPAL CORPORATIONS—ATTACK ON IMPROVEMENT DISTRICT—BURDEN OF PROOF.—In a direct attack upon the organization of a street improvement district, the burden was on the plaintiffs to show that the ordinances creating the district and providing for the improvement were invalid.

2.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—PRESUMPTION.—The finding of a city council that a petition for a street improvement contained a majority in value of the real property owners in the district is prima facie correct.

3.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—EVIDENCE.—Evidence held to show that the valuation of nontaxable school property in a street improvement district was extended by the assessor on the assessment roll filed by him with the county clerk, before the city council determined whether a petition for the improvement was signed by a majority in value of the owners of real property in the district.

4.  MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—IRREGULARITY.—Where a list of exempt property and its value was extended by the county assessor on the regular assessment roll, his failure to

file a separate list at the time of filing the roll with the county clerk, under Crawford & Moses' Dig., § 9936, was a mere irregularity which did not avoid the assessment roll as a guide to the city council in determining whether a petition for a street improvement was signed by a majority in value of the property owners.

5. MUNICIPAL CORPORATIONS—STREET IMPROVEMENT—EVIDENCE.— Where the city recorder testified that an initial petition for creation of a street improvement district was duly filed, and the ordinance creating the district recited that more than ten owners of real property within the bounds of the district petitioned for its creation, a finding that the petition was filed will be upheld.

Appeal from Yell Chancery Court, Dardanelle District; *W. E. Atkinson,* Chancellor; affirmed.

*Ward & Caudle,* for appellant.

*Louis M. Robinson, Herbert C. Scott,* and *Hays, Priddy & Rorex,* for appellee.

WOOD, J. By ordinance No. 266 the town council of the city of Dardanelle, Arkansas, on September 29, 1925, created Street Improvement District No. 1 in the town of Dardanelle for the purpose of paving certain streets. On the 29th of October, 1925, the council repealed ordinance No. 266 and passed ordinance No. 270, creating an improvement district in the town of Dardanelle designated as Street Improvement District No. 1. This district was created for the purpose of paving certain streets in the town of Dardanelle. On November 6, 1925, a petition was presented to the council, purporting to contain a majority in value of the real property within the bounds of the district, and praying that the improvement be made. At the same meeting a number of citizens, property owners, presented their petition protesting against the improvement and asking that their names be stricken from the petition praying for the improvement to be made. The town council, at this meeting, by resolution directed that notice to property owners in the district be given by publication, once a week for two weeks, of the filing of the petition praying for the improvement, and fixing November 27, 1925, as the day for hearing the petition. On November 27, 1925, the council met pursuant to the notice, and adjourned until November 28,

1925. Upon reconvening, the council granted the prayer of the protesting property owners who had petitioned that their names be stricken from the petition praying for the improvement to be made, whose property values, as shown by the assessment, amounted in the aggregate to the sum of $16,850. The council thereupon, by resolution, declared that they had examined the remaining signatures on the petition and found that it contained a majority in value of the owners of real property in the district. On December 21, 1925, certain citizens and property owners in the district, hereafter called appellants, filed their complaint against the district and its commissioners, hereafter called the appellees. The complaint alleged, first, that the original petition, required to be signed by ten or more property owners within the proposed district, did not contain a description of the property as appeared in the ordinance creating the district. Second, that the petition purporting to contain a majority of the real property owners was circulated and signed by a great majority before an ordinance was passed creating the district. Third, that ordinance No. 270, attempting to create the district, did not describe the boundaries as the same were described in the original petition signed by ten real property owners. * * * Eighth, that the petition for the improvement did not contain a majority in value of the property owners of the real property in the district, as shown by the last county assessment. Other grounds were alleged in the complaint, but these have been abandoned.

The answer denied all the material allegations of the complaint. The decree recites that the cause was heard upon the pleadings and the depositions of the witnesses; a list and description of the property, and the value thereof, located within the district as shown by the last county assessment; the petition purporting to contain a majority in value of the real property in the district; a plat of the town of Dardanelle showing the boundaries of the district; a copy of ordinances Nos. 266 and 270; the minutes of the meeting of the town council showing the

names of the property owners stricken from the petition purporting to contain a majority of the property owners praying for the improvement, and showing that, after these names were stricken, the town council found that the petition praying for the improvement contained a majority in value of the real property owners within the district, and that the list of these persons signing the majority petition was presented to the court, alphabetically arranged.

The county clerk of Yell County was called as a witness for the appellant. According to his testimony, the assessment record of property owners in the district, the description of their property and the valuation thereof in 1925, were delivered to him by the county assessor September 20, 1925. The extension of churches and schools was not made at that time. Such extension was made the latter part of December. Witness made some kind of a certificate to the town council of Dardanelle, on the 27th of November, at the request of Lewis Robinson. He certified that the petition before the town council praying for the improvement contained a majority in value. of the property owners. He did not check to find out. Robinson presented the certificate to witness. The record had been checked and the totals estimated, and witness certified to those totals. When the books were turned over to witness by the assessor, in September, everything was extended on the list except church and school property. The value of church and school property was extended on the list by the county assessor of Yell County. Witness then made another list and made another certificate about the 12th of January. Witness testified, in answer to questions as to how he arrived at the valuations which he certified to the town council as containing a majority, "Well, I took the valuations extended—I don't recall whether I totaled that or they had been totaled, I simply took the totals that had been made of the signers of this petition, and saw that it was more than the other figures. Whether I made them I don't recall, or whether they were checked over by Mr.

Robinson or some one else.'' Witness further testified that the valuation of the school district property on which the public school building was located is $35,000. That was extended either by witness or by Howard, the county assessor, before the taxbooks were given to the sheriff. Also an additional school item of $2,500 was put on at the same time.

Violet Coleman testified for the appellants that she was the deputy county clerk, and made the list of the property attached as an exhibit to the deposition of Chester O. Hill, county clerk. Another witness, McCray, testified that he identified the assessment list of real property situated within the corporate limits attached as an exhibit to the deposition of Chester O. Hill. He extended the value of the property on the list within the limits of the district, and also the value of the property of all persons who signed the petition for the improvement as their names appeared on the list. He did not include in the totals the value of church and school property, but did include all other real estate shown on the list. The total value of the real property as shown by the list was $227,310. In making this assessment, witness was guided by the list of the persons who signed a petition for the improvement, and extended the value of their property as it appeared on the assessment list. That was the only property they gave the owner credit for.

Another witness testified substantially to the same effect. These two witnesses didn't make any investigation to find out who were the actual owners of the property appearing on the list made an exhibit to Hill's deposition. Unless the name or initial on the majority petition was on the list furnished by Chester Hill, witness did not count it. The witness said they did the best they could without hunting anybody up.

Lewis Robinson testified that he had made an investigation and checked the signers of the purported second petition for the improvement. He prepared a list showing the names of the signers and the property owned by

each of them. His list was made from the last assessment list on file with the county clerk of Yell County. The total amount of property shown to have been owned by the property owners was $170,065. He attached a list showing the names of all persons signing the petition for the improvement, with the valuation of all the property owned by each individual set opposite his name. The testimony of this witness shows that he examined the assessment record to see if the schoolhouses were assessed, and found that they were assessed by the assessor at $35,000, before the council passed on the question as to whether the petition contained names of a majority in value of the property owners embraced in the district.

The testimony of the assessor and of his assistant, and the testimony of the president of the school board at Dardanelle, tended to show that the value of school property, $37,500, was extended on the assessment record prior to November 28, 1925, the date on which the town council made its finding that the petition contained a majority in value of the property owners in the district.

1. The appellants contend that the trial court erred in finding that the petition for the improvement was signed by a majority in value of the real property owners in the district. This action was a direct attack upon the proceedings creating the district and providing for the improvement. The burden was upon the appellants to show that the ordinances creating the district and providing for the improvement were invalid. The finding of the city council that the petition for the improvement contained a majority in value of the real property owners in the district is *prima facie* correct, and we are unable to say, from the above testimony, that the finding of the council and of the trial court, to the effect that the petition for the improvement contained a majority in value of the real property owners in the district, is against the clear preponderance of the evidence.

In *Henry* v. *Board of Improvement of Paving District No. 3,* 170 Ark. 673, among other things, we said:

662 DUNBAR v. ST. IMP. DIST. 1 OF DARDANELLE.    [172

"The statute provides how the ownership shall be ascertained, and, in the absence of direct testimony showing that the petitioners were not the owners of a majority in value of the property in the district, we must indulge the presumption that the city council heard evidence and correctly determined, upon the basis prescribed in the statute, that the petitioners constituted a majority in value of the owners of property in the district.    There is no requirement in the statute that the proceedings before the city council shall be reduced to writing, and it is not proper to permit an inquiry in this action as to how the city council arrived at the conclusion.    Until the *prima facie* effect of the findings of the city council is overturned by evidence, we must, as before stated, indulge the presumption that only legal evidence was heard and that the finding was made upon the basis prescribed by the statute."    Learned counsel for the appellants contend that the assessor did not comply with the provisions of the law.

The statute provides that, in determining whether those signing the petition for the improvement constitute a majority in value of the owners of real property within the district, the council and the chancery court shall be guided by the record of deeds in the office of the recorder of the county, and shall not consider any unrecorded instrument. Section 5652, C. & M. Digest. There is no testimony in the record tending to prove that the council and chancery court, in determining the value of the property, did not follow the above provisions.

Learned counsel for the appellants contend that the town council should not have considered the value of the nontaxable school property in the district in determining whether the petition for the improvement was signed by a majority of the owners of real property in the district, because, as they assert, the assessor did not file a separate list of same at the time he filed the original assessment roll with the clerk of the county, in compliance with § 9936, C. & M. Digest.    But we are convinced that the preponderance of the testimony shows that the valuation

of such property was extended by the assessor on the assessment roll filed by him with the county clerk before the council determined the question of whether the petition for the improvement was signed by a majority in value of the owners of real property; and this was sufficient to meet the requirements of the law with reference to filing a list showing the nontaxable property in the district and its value.

Since the list of nontaxable property and its value was in fact extended on the regular assessment roll, the fact that the assessor did not file a separate list of said property was wholly immaterial and is a mere irregularity which would not avoid the assessment roll as a guide to the council in determining the question of whether or not the petition for the improvement was signed by a majority of the owners of real property in the district. To hold otherwise would be magnifying form above substance. According to three witnesses (the assessor and his assistant, and Robinson) the council, at the time it determined that the petition for the improvement was signed by a majority in value of the real property owners in the district, had before it the assessment roll that had been filed with the county clerk, containing a list of names of owners of all taxable property, and likewise the list of all nontaxable property in the district and its value. The testimony of the county clerk tends to prove that the nontaxable property was extended on the assessment roll after the council acted on the petition for the improvement. But the preponderance of the testimony is to the contrary. There was a decided conflict in the testimony. But a decided preponderance of the evidence shows that the council, at the time it determined that the petition for the improvement was signed by a majority of the owners of real property in the district, had before it an assessment roll which complied substantially with the requirements of the law, and the finding of the council and of the trial court, that a majority in value of the property owners in the district had signed the petition for the improvement, is sustained by

a preponderance of the evidence. At least, such finding of the trial court is not clearly against the preponderance of the evidence. It was purely a question of fact as to whether the petition for the improvement was signed by a majority of owners of real property in the district. The finding of the council and of the trial court was in conformity with the statutes applicable in such cases as construed by this court in *Improvement District* v. *Railway,* 99 Ark. 508, 139 S. W. 308, and *Malvern* v. *Nunn,* 127 Ark. 418, 192 S. W. 709.

2. A more serious question in the cause, and which has given us the greatest concern, is whether or not ordinance No. 270 creating the district was bottomed on an initial petition signed by ten resident property owners asking for the establishment of the improvement district and designating the boundaries of the district as prescribed in ordinance No. 270 creating it. The first and third paragraphs of the complaint alleged in substance that ordinance No. 270 creating the district does not describe the boundaries of the district as they were described in the original petition signed by ten resident property owners of the district. The answer denies these allegations as specifically as they are set forth. The testimony on this issue is substantially as follows: Albert Rorex testified that he was the city recorder of the city of Dardanelle, Arkansas. He identified the record containing the minutes of the meetings of the city council. He testified that ordinance No. 266 was passed creating a paving district in the town of Dardanelle on September 28, 1925. At that time there had been a petition, known as the initial petition, presented to the council, praying for the passage of such an ordinance. On October 29, 1925, ordinance No. 266 was repealed, and on that date ordinance No. 270 was passed. There was a difference in the boundaries of Street Improvement District No. 1 as created by ordinance No. 266 and as created by ordinance No. 270. Witness was asked this question: "After the repeal of ordinance No. 266 was there another initial petition presented to the council?" He answered, "Yes."

The witness was then handed a petition purporting to be signed by a majority of the owners in Street Improvement District No. 1 designated as "second petition." He testified that this petition was circulated both under ordinance No. 266 and ordinance No. 270; that that petition had the same description as the first petition. They copied the second from this one; that the description in the second petition is the same as that in ordinance No. 270. Two or three dozen petitions were circulated. The original petition signed by ten resident property owners, upon which ordinance No. 266, creating the district, was passed, which was afterwards repealed, is not in the record. Neither do we find in the record the original petition signed by ten resident property owners upon which ordinance No. 270, creating the district in controversy, was passed. The city recorder, however, testified that, after the repeal of ordinance No. 266, there was another initial petition presented to the city council. The minutes of the meeting of the city council at which an ordinance was passed repealing ordinance No. 266 and at which ordinance No. 270 was passed, creating Improvement District No. 1 of the town of Dardanelle, Arkansas, do not show that an initial petition containing ten resident property owners in the district created by ordinance No. 270, was before the council when ordinance No. 270 was passed. Ordinance No. 270, however, recites as follows: "Whereas, more than ten owners of real property within the bounds herein mentioned have petitioned the town council of the incorporated town of Dardanelle, Arkansas, to take steps toward the making of local improvements:

"Now therefore be it ordained by the town council of the incorporated town of Dardanelle:

"Section 1. That Street Improvement District No. 1 be and the same is hereby created, laid out and established for the purpose of making local improvements therein by grading and paving the following streets." Here follow a description of the streets and a description of the boundaries of the district. In the absence of a peti-

tion signed by ten resident property owners describing the boundaries of the improvement district and the real property to be embraced therein, it cannot be determined by a comparison of the initial petition that the ordinance No. 270 creating the district describes the property and boundaries embraced in the district the same as the property and boundaries were described in the initial petition. But the testimony of the city recorder shows that, after ordinance No. 266 was repealed, another initial petition was presented to the council, and the recitals of ordinance No. 270 above show that:

"More than ten owners of real property *within the bounds herein mentioned* have petitioned the town council of the incorporated town of Dardanelle, Arkansas, to take steps toward the making of local improvements therein and designating the nature of said improvement."

The above testimony, we believe, is sufficient to show that an initial petition was filed (after the repeal of ordinance No. 266) for the creation of an improvement district describing the property embraced therein and boundaries of the district as same were described in ordinance No. 270 creating the same. We have held that "a special limited jurisdiction is conferred on the city council to lay off the district as designated by the property owners in the first petition, and the council must conform strictly to the authority conferrred upon it. The filing of such a petition is mandatory and jurisdictional. * * * The city council has no authority to establish a district the boundaries of which are not in conformity with the territory as described and set up in the petition." *Riddle* v. *Ballew,* 130 Ark. 101, 197 S. W. 27.

The burden, as we have stated, was upon the appellants who are attacking the validity of the district to prove that ordinance No. 270 creating the district is not valid. It occurs to us that there is testimony in the record tending to prove that ordinance No. 270 was based upon an initial petition describing the property embraced therein and the boundaries thereof the same as they are described in ordinance No. 270. The testimony of the

city recorder and the recitals of the ordinance itself tend to prove that such was the case and are sufficient for that purpose, in the absence of the initial petition itself or other proof to the contrary. The appellants have not brought into the record any such proof. We conclude therefore that the decree of the chancery court is in all things correct, and it is affirmed.

HART, J., dissents.