ELTON GORDON ET AL *v.* STREET IMPROVEMENT DISTRICT No. 1 OF GILLETT ET AL

5-4181                                    414 S. W. 2d 628

Opinion delivered May 15, 1967

*John W. Moncrief,* for appellants.

*Macom & Moorhead* and *Townsend & Townsend,* for appellee.

LYLE BROWN, Justice. Two complaints were filed by a total of six property owners (appellants here) challenging the formation of, and validity of assessments levied by, Street Improvement District No. 1 of Gillett. The trial court held the District to have been legally formed and the challenged assessments valid.

The District was formed in 1964 and covered the entire city, or town, of Gillett. At that time a part of only two streets in Gillett were hard-surfaced. The new program called for the hard-surfacing of a great majority of all business and residential streets. These suits were filed in July and August 1965, shortly after the ordinance was passed assessing the benefits to the property owners.

Appellants list nine points to be relied upon for re-

versal. The points are not listed in the argument, but from a careful examination of matters argued, we discern three contentions. We have many times held that points not argued in the brief are waived. This case points up one good reason for the rule. Absent argument of points, we would have to explore a record consisting of 689 pages, an abstract consisting of 147 pages, and numerous detailed exhibits. We proceed to consider the three points which are argued.

1. *The assessors and commissioners of the district arbitrarily and illegally accepted the assessments made by the county assessor of the value of the improvements.* The argument does not cite us to any testimony to support this contention, nor do we find any in the abstract. Two of the district's assessors testified at length. They established a well-recognized formula for assessing benefits—such elements as property value, superficial area, frontage, location, improvements, and relation to business and other establishments. The board held some thirty meetings and all decisions on assessment factors were made when at least two of the assessors were present. The services of a registered professional engineer were utilized. All three assessors signed the original assessment. The assessment on a small number of tracts was revised and that certificate was signed by two of the assessors. If any of the tracts in the revised assessment were owned by appellants it is not pointed out in the abstract or the brief. The trial court approved these records and in the absence of citation to the contrary we must assume he was correct.

2. The second contention of appellants is: "The evidence shows the partiality and discrimination as between Sullivan, Gordon, Fred Morgan, Vizzier, Lehman, M. M. Morgan and Pratt appellants, on the one hand, and certain town officials and some of the appellees on the other." From an examination of the abstract, we find the conclusion of the trial court on this point to be fully justified by the evidence. His finding was stated

in these words:

> "Even though an effort was made to show that the assessors gave favored treatment to the mayor, members of the council and others, the record does not reflect that the assessors deviated in the slightest from the established method and formula used in assessing the benefits. On the contrary, the record reflects that they consistently used the same criteria and formulae for each and every parcel and tract of real property located within the confines of the street improvement district."

Two of the assessors testified for a substantial part of the three-day trial. They were closely examined and cross-examined with respect to the assessments on tracts of alleged "favored" citizens. The testimony of the landowner-appellants in this regard consisted mostly of personal opinions to the effect that they had been mistreated. Their testimony was not based on benefits measured by the well-developed guidelines used by the assessors. A summarization of the testimony would serve no useful purpose and unnecessarily extend the opinion.

3. Finally, appellant F. Lehman asserts a wrongful and excessive assessment of his farm land. Preliminarily, Lehman contends that he was fraudulently induced to sign a petition for the creation of the district. Part of Lehman's farm extends into the city limits and is improved inside the city. He was assured, so he says, that his farm would not be affected by any tax. *Boles* v. *Kelley*, 90 Ark. 29, 117 S. W. 1073 (1909), holds a similar contention to be unavailing when it is not shown that signatures procured by fraud were sufficient to reduce the number of remaining signers to less than a majority. There was no such allegation in the case at bar.

Finally as to the allegation of excessive assessment: The north portion of Mr. Lehman's farm is inside the city limits. That portion is platted in lots and

blocks, but functionally it has remained in acreage. There appears to be roughly forty acres. His property line abuts several of the streets which will be paved. The present improvement on this property is a modern home at the south end of Second Street. That street will be paved. Mr. Lehman also has an elevator in the northeast corner of the property and within a few hundred feet of streets to be paved. He does custom drying of rice, oats, and soybeans. That portion of Lehman's farmland inside the city will abut fourteen blocks of improved streets. The annual taxes are $219.80. Lehman figured it "acreage-wise" and it amounts to $4.86 per acre. The chancellor found Lehman's assessments to be neither arbitrary, discriminatory, capricious, nor excessive.

Most of the protesting landowners testified. Essentially, they gave their opinion that their assessments were excessive, particularly because of the absence of direct and immediate benefits to be received from the improvement. They also made comparisons with assessments levied on their neighbors' properties. They showed no knowledge of the many criteria used by the assessors. Under a basic rule of law enunciated by this court on at least four occasions, it is most difficult to establish excessive assessment by the landowners' type of testimony. In *Improvement Dist. No. 1 of Clarendon* v. *St. Louis Southwestern Ry.*, 99 Ark. 508, 139 S. W. 308 (1911), this court said:

"When the assessment of the benefits arising from, and the proportionate cost of, a local improvement has been made upon the property specifically benefited thereby, by the proper officials in the manner prescribed by law, it devolves upon the party attacking same to show that the amount of these assessments is excessive or unequal. It has been held that the amount of the benefits which such officers have found and determined to accrue to each lot and parcel of real property in a district by reason of the improvement will be presumed to be correct and just,

604

and the courts will not disturb same until the contrary has been shown by the evidence. Such evidence must consist, not merely of opinions that the assessments are excessive, but of facts which 'will overturn the *prima facie* fairness and equality of the assessment established by the returns of the assessors.' "

The findings of the chancellor are in all respects affirmed.